A. N. Corbin of Coupeville, Wash., for farm debtors.

Tom S. Patterson and Russell F. Stark, both of Seattle, Wash., for petitioner.

BLACK, District Judge.

Whatever the technical situation of this proceeding might be under the pleadings or whatever the technical authority of the Court might be if the statutes relating to this matter had been strictly followed in so far as they fix procedure, clearly the parties, by their respective courses of action, including stipulations and submission of testimony, in fact authorized this court to now fix the value of the farm lands of the farm debtors and the conditions and time for redemption at that value by the farm debtors, and to determine whether there should be a sale in the event no redemption should be had.

It was stipulated in open court at the beginning of the hearing that included in the matter to be considered the court might have before it on review such approval as the Conciliation Commissioner made of the appraisal and rental, regardless of whether the approval of the Conciliation Commissioner as to the appraisal and the rental may have been made on the 9th of March, 1940, or in August, 1940, or whether at some intervening date, and whether it was in writing or orally.

And regardless of what may have been the technical rights of the parties to introduce new evidence to supplement the record of the Conciliation Commissioner and the appraisers both sides at the hearing before this Court did introduce a substantial amount of oral evidence. Considerable documentary evidence was also introduced. The farm debtors prior to the hearing subpoenaed and had in attendance several witnesses who testified at considerable length as to their respective opinions in connection with the market or rental value of the property, or both. During the hearing it was stipulated that a certain appraiser of the petitioner, Home Owners' Loan Corporation, if personally present, would testify that he had been an appraiser of the petitioner since 1934, had appraised approximately forty thousand pieces of property in this state, most of which were for mortgage purposes but many with respect to sales, so applying all of his time for approximately six years; that it was the practice to sell on appraisals of such appraiser and that of two thousand properties acquired by the Home Owners' Loan Corporation between sixty and seventy-five per cent. had already been sold on such appraisals, with all of which he was familiar; that he had appraised this particular property and that its present fair and reasonable cash market value as of the time of the hearing and at the time of the appraisal by the appraisers was at least $5,250. The attorney for the farm debtors objected only as to the materiality of such testimony and as to the qualification of the witness.

Certainly such testimony was material and the witness was qualified. The only question, of course, would be as to the weight, if any, that the court should accord to same.

The prayer of the petitioner's petition was that the court should review all orders and proceedings had before the Conciliation Commissioner and should enter such order or orders as to the court seemed equitable, just and lawful, including among other relief prayed for, an order authorizing the real estate to be sold at public auction, and the appointment of a trustee.

As above mentioned, by the action of both parties preceding and during the hearing the proceeding became, one for court decision upon evidence submitted and not merely for review.

The evidence submitted to the court established the following:

The real estate in question is an orchard tract of 8.8 acres in Douglas County three miles from Wenatchee. The farm debtors bought same in 1922 on a contract at a price of $23,000 and thereafter certain improvements were placed thereon. Included in the improvements on the property is a modern house, besides a barn and a packing shed. The home has five rooms on the main floor in addition to such rooms as may be in the basement; it is fully modern with hardwood floors, electric and water service, hot air heat, excellent plumbing. And it is surrounded by an especially attractive and expensive terraced rock garden and with trees and shrubbery.

Some time after the purchase in 1922 the farm debtors obtained a deed to the property and ultimately placed two mortgages thereon.. By 1934 one of such mortgages had been foreclosed and the farm debtors thereupon made application to the Home Owners' Loan Corporation for a loan and such corporation paid off all of the encumbrances, including back taxes against the property. The amount advanced by the Home Owners' Loan Corporation was $11,-195 payable at the rate of $88.53 per month. This amount was many thousand dollars less than the aggregate of the encum-

brances which had been against the property and which in part had been retired by the Home Owners' Loan Corporation at a substantial discount.

The farm debtors from 1934 paid none of such agreed monthly payments nor even the taxes or fire insurance but some amounts were received by the Home Owners' Loan Corporation through a crop mortgage, etc. The parties are in dispute as to whether this was voluntary on the part of the farm debtors or compelled.

At any rate the total amount due the Home Owners' Loan Corporation at the present time is substantially in excess of the $11,195 advanced by the Home Owners' Loan Corporation in 1934 for the relief of the farm debtors.

In 1939 the farm debtors were adjudicated bankrupts in voluntary bankruptcy proceedings under the general bankruptcy laws and obtained their discharge. Subsequently these farm debtors filed a petition for relief as farm debtors under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, and failing to secure a composition and extension under agreement with the creditors such original proceeding was dismissed and the farm debtors filed a petition to be adjudged bankrupts under Section 75, sub. s.

Thereafter appraisers appraised the real estate as having a fair and reasonable market value of $1,000 and the Conciliation Commissioner ordered that the debtors should have possession of the real property for three years and should pay $115 annually as rental. The Home Owners' Loan Corporation, feeling aggrieved, came to this court ·for· relief, insisting, among other things, that the real property had an actual cash market value in excess of $5,250. In normal years the orchard produces about eight thousand boxes of apples annually.

The farm debtor in his testimony before this court insisted under oath that the total value of the 8.8 acres, including orchard and all improvements, was $880 and that such was the value of the property free of all taxes and encumbrances whatsoever. His testimony, in effect, was that there was no rental value to the property at all other than taxes and water and that he at the present time had the complete use and possession of four similar properties by merely paying the taxes and water or less and could secure additional orchards under similar arrangements. The farm debtor further testified that he did not know and

could not even estimate what the house cost, but that it was worth very little. His further testimony was that the original part of the house was very old, being an old settler's shack, that the new part was built around it about thirteen years ago as a makeshift and was in poor condition with the foundation giving way, the concrete being a poor job, with the floor not substantially built and with the roof in poor condition and leaking. No interpretation of his testimony concerning the house is possible except that the house had never been in good condition or repair or of any substantial value.

Other witnesses produced by the farm debtors indicated lack of knowledge as to the house but gave their various opinions of the value of the real estate for sale being between $800 and $2,000 (the higher figure being on terms) and for rent $115 annually, upon the ground that the only market for sale or rent of orchard properties now or for many years past had been completely demoralized. The court believes these witnesses were in good faith but feels compelled by reason of the debtors' application of 1934 and petition of December, 1939 and other circumstances and evidence to accept the mortgagee's position as to the value of such tract.

The written application for the loan signed by Mr. Cole in 1934 was to the effect that the house was then six years old, was in a good state of repair, was forty by thirty-eight feet and cost $6,500; that the barn cost $300 and the packing shed $750, and that the land cost $23,000, or a total of $30,550. From the exhibits introduced in the case undoubtedly the Home Owners' Loan Corporation relied upon the representations of the farm debtor as to the house then being six years old, in good repair and that it cost $6,500, instead of its being an ancient remodeled shack in poor repair with cost unknown. It accepted the property as representing a total investment of $30,550 and of having a reasonable and fair market value in the demoralized market of 1934 of approximately $14,000. And at the request of the farm debtor it advanced $11,195 thereon.

Regardless of the debtor's testimony before the court the original petition signed by the farm debtor and his wife under oath on December 1, 1939, set forth that this orchard tract was subject to a mortgage for $11,195 and that its value over and above encumbrances was $2,000, thus making a

total value of said tract of $13,195 on December 1, 1939. All the evidence in the case was to the effect that there had been no change in value from long before December, 1939, to the date of hearing. It may be remarked in passing that the valuation by the farm debtors in the petition of December, 1939, was not much at variance with the $14,000 valuation under which the Home Owners' Loan Corporation made its loan in 1934.

From the exhibits and testimony, including the photographs of the home and the surroundings the court is compelled to the conclusion that a fair and reasonable market value for the tract now is and at all times since these proceedings were instituted in December, 1939, has been at least $5,250.

If the actual market is as demoralized as the farm debtors contend then a sale at $880 or any substantial amount under $5,250 would be a forced sale at a grossly unfair and unreasonably low price such as the Home Owners' Loan Act, 12 U.S.C.A. § 1461 et seq., and the Farm Debtor Statutes were intended to avoid.

Under the contentions and testimony of the farm debtor before the court the property not only has no real value or real rental value but there is no prospect of there being an increase in the future as to either. Under the farm debtor's testimony the property is of no use or moment to him as he not only is able to get but is actually in possession of four other properties. Under the evidence there is no possibility of rehabilitation of the debtors nor does his testimony permit inference that he expects or desires such.

If the farm debtor is in good faith in his representations of the worthlessness and uselessness of the property he should not be interested in whether it were appraised at $880 or $5,250. He contended that it does not and has not been producing enough for many years to even pay the taxes and water.

It is provided in Section 75, sub. s that the rental shall be based upon the rental value, net income and earning capacity of the property and that "the court, in its discretion," may, in addition to the rental, require payments on the principal due and owing by the debtor, etc.

The court deems $115 annually far below the rental value of the real estate and deems insufficient any annual rental less than $400 for a property capable of producing about eight thousand boxes of apples during a normal season and with a modern and attractive home as convenient to Wenatchee as this one. But since the debtors evidenced lack of interest in paying more than merely enough to cover taxes and water charges it does not appear necessary to the disposition of the property to fix the proper rental.

As provided in Section 75, sub. s, and pursuant to the decision of James M. Wright, Petitioner, v. Union Central Life Insurance Company et al., 61 S.Ct. 196, 85 L.Ed. ——, United States Supreme Court, decided in December, 1940, the farm debtors shall have an opportunity to redeem such property at the value of $5,250 fixed by the Court until the first day of May, 1941, and thereafter the court, at the petition of the mortgagee, will appoint a trustee and an immediate sale of the property will be had at public auction, under the provision that the mortgagee shall not be permitted to bid more than $5,250 for said property and that the farm debtors shall have ninety days after such sale to redeem therefrom.

So long as the farm debtors properly care for said property and the orchard and improvements thereon and properly irrigate and spray the orchard and pay therefor, they shall, until May 1, 1941, be entitled to the possession of said property and if they fail to redeem by said time shall, if immediate sale be ordered, continue to have such right so long as they comply with such requirement until the sale and until the ninety days for redemption thereafter has expired. However, the mortgagee, in order to protect its lien, shall also have the right at all such times to go upon said property (other than in the home while occupied by the farm debtors) and at its expense spray and irrigate same as may be reasonably necessary to preserve and protect the orchard and protect the value of said property. If sale is not had, as above, then the debtors shall be required also to pay a proper rental to continue in possession.

The Court has very sincere sympathy for distressed farmers and those seeking an opportunity for rehabilitation under the provisions of Section 75 and 75, sub. s and recognizes that under the law such farm debtors are usually entitled to possession of property for three years before a sale is had. But the provisions are not intended to totally destroy the loan of a party which in good faith came to the farm debtors'

rescue upon his written representations which he later under oath attempts to show were false.

What the debtor seeks would destroy the loan and yet, if the debtor is in good faith, would benefit the debtor not at all. The decision which the lender seeks will salvage less than half of the lender's loss and under the debtor's claim hurt the debtors not one whit.

The court is convinced that the debtor in fact does believe that the property is worth much in excess of $5,250, and that his testimony that it was worth but $880 was with the purpose of having that fixed as the value so that he, upon payment thereof, could secure the property at that unreasonably low price and thereby wipe out the $11,195 encumbrance of the Home Owners' Loan Corporation created when it sought, at his request, to be the debtors' benefactor.

Order in conformity herewith is to be presented after notice.