BORCHARD ET AL. *v.* CALIFORNIA BANK ET AL.

No. 752. Argued April 30, 1940.—Decided May 20, 1940.

---

[10] Compare *Schenck* v. *United States*, 249 U. S. 47, 52; *Herndon* v. *Lowry*, 301 U. S. 242, 256; *Thornhill* v. *Alabama*, ante, p. 88.

312

*Messrs. Lloyd S. Nix* and *William Lemke* for petitioners.

*Mr. Thos. W. Henderson,* with whom *Mr. Chas. E. Donnelly* was on the brief, for respondents.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

We granted certiorari in this case for the reason that it presents important questions with respect to the procedure required by § 75(s) of the Bankruptcy Act, as amended.[1]

The precise matter in controversy is whether the bankruptcy court may permit foreclosure of mortgage liens where the procedure prescribed by § 75 (s) has not been followed.

The petitioners, husband and wife, are farmers. Over the period January 24, 1927 to June 19, 1933, they borrowed from the respondent, the California Bank, a total of $87,566.93, in varying amounts, executing to the bank their promissory notes for the respective loans together with deeds of trust [2] on their farm real estate as security. From time to time they made payments which reduced the principal of the indebtedness to $53,919.20. The lender, in the meantime, had made some advances towards the payment of taxes on the property. Further to secure their indebtedness they executed, on January 30, 1934, a mortgage on all the crops standing or growing, or

---

[1] Act of March 3, 1933, c. 204, 47 Stat. 1467; Act of June 28, 1934, c. 869, 48 Stat. 1289; Act of August 28, 1935, c. 792, 49 Stat. 942. The Act has been further amended in particulars not here important by the Act of June 22, 1938, 52 Stat. 840, 939. Section 75, as it now stands, is Tit. 11, U. S. C. § 203.

[2] The deeds of trust ran to the respondent Trust Company as trustee.

which should thereafter be planted, grown, cultivated, cut, gathered, packed, or harvested, during the life of the mortgage on certain of their farm real estate.

November 17, 1934, they filed their petition under § 75 of the Bankruptcy Act, which was approved and referred to a Conciliation Commissioner. In January 1935 the respondent bank declared defaults, and recorded notices thereof and of its election to cause the property to be sold pursuant to the deeds of trust, and the law of California.

March 25, 1935, the Conciliation Commissioner appointed appraisers who filed an appraisal on May 1 valuing the debtors' real estate at $68,550. It is to be noted that § 75 contains no provision for appraisal during the course of the conciliation proceedings covered by subsections (a) to (r); nor do we find any rule of the District Court providing for appraisal at this stage of the cause. The transcript of record does not disclose whether this appraisal was asked by any creditor or by the debtors. So far as appears, the order for the appointment of appraisers was made by the Conciliation Commissioner of his own motion.

The debtors were unable to obtain the requisite acceptance of creditors to the composition and extension proposal they submitted. As a consequence, they amended their petitions and prayed to be adjudicated bankrupts in accordance with the provisions of § 75 (s). The petition was granted and an adjudication entered May 6, 1935. Apparently no further proceedings were taken until June 26, 1935, when the bankruptcy cause was dismissed on the ground that this court had held § 75 (s) unconstitutional.[3] On the same day the debtors petitioned a local court for relief under a State moratorium act and obtained an order granting a moratorium, which

---

[3] *Louisville Joint Stock Land Bank* v. *Radford*, 295 U. S. 555.

remained in effect until September 20, 1935, when the debtors filed a petition for reinstatement of the bankruptcy cause in accordance with the amendment of § 75 (s) adopted to meet the decision in the *Radford* case.[4] On the same date the District Court approved the petition, ordered the proceedings reinstated, and referred the case to a Conciliation Commissioner in accordance with the provisions of § 75 (s). The court restrained the respondents from selling, or proceeding with a sale of, the real estate covered by the deeds of trust and also enjoined them from collecting from packers or processors the proceeds of crops covered by mortgage, until the further order of the court.

October 18, 1935, the petitioner Franz J. Borchard presented his petition to the Conciliation Commissioner praying that appraisers be appointed; that his exempt property be set aside to him, and that he be allowed to retain possession, under the supervision and control of the court, of all of the remainder of his property, and for such further order as might be just and proper in the premises, as authorized by § 75 (s). Shortly thereafter the debtors filed a petition for an order on the bank to compel it to release its asserted claim to the crop of oranges grown on their property in 1935. In opposition the bank not only asserted the validity of its lien, but urged that the proceedings be dismissed because § 75 (s), as amended, was unconstitutional. The District Judge held that the bank had a lien on the 1935 orange crop but refrained from passing upon the validity of § 75 (s), stating that he would decide that question at a later date if the parties so desired. Apparently the parties requested a ruling, and, on May 15, 1936, the Judge overruled the contention of the bank and refused to dismiss the proceedings.

---

[4] Act of August 28, 1935, c. 792, 49 Stat. 942.

Nothing having been done pursuant to the petition for appraisal and award of possession to Franz J. Borchard, the petitioners and respondents, on May 27, 1936, filed in the District Court a stipulation by the terms of which $3,900, held by third parties, being the proceeds of 1935 crops harvested from the premises, was to be paid to the bank and by it expended for the cultivation and improvement of the land. The District Court accordingly ordered the sum paid to the bank. June 10, 1937, the parties stipulated that $2,494, like proceeds of crops harvested, be paid to the bank, to be expended for the cultivation of the farm. The court so ordered. December 20, 1937, a stipulation was filed and an order made that $2,000 be paid to the bank, $1,500 to the debtors, and $946 applied to taxes. Finally, on March 7, 1938, pursuant to stipulation, $1,763 was released from the hands of third parties to be expended for the cultivation and preservation of the mortgaged real estate. The stipulation further provided that the bank should receive the monies realized from the sale of then growing crops and should apply them, so far as necessary, to maintain and protect the orange grove on the property.

All of the stipulations reserved the rights of the parties and were to be without prejudice to such rights.

May 24, 1938, the debtors petitioned the Conciliation Commissioner for an appraisal and the setting aside of the property to them. June 22, 1938, appraisers were appointed and they reported the value of the real estate as $87,300. It does not appear what, if any, proceedings were had before the Conciliation Commissioner upon the coming in of the appraisers' report. The petitioners assert that the Commissioner was considering the terms of an order for a stay and the conditions to be inserted in that order. On November 10, 1938, however, the bank filed its petition in the District Court for leave to sell under its trust deeds. The petition recited the facts as

above outlined, stated the principal and interest due under the various notes; set forth the amount of the advances the bank had made for taxes and other accounts, and showed an existing indebtedness, secured by deeds of trust and mortgage, totaling $89,246.82. It alleged that the mortgaged premises would not bring more than $65,-000; that the bank had already suffered a serious loss; and that further delay in the sale of the property would entail a greater one. The court took testimony as to value and concluded that the real estate was not worth more than $65,000. It found that, as the debtors had had several years within which to arrange an adjustment of their obligations and had been unable so to do, it was fair and equitable that the bank be allowed to proceed so as to save itself further loss. The petition was granted and the outstanding restraining order was dissolved.

On appeal by the debtors the Circuit Court of Appeals affirmed the decree,[5] holding that the District Court's action was justified by our decision in *Wright* v. *Vinton Branch Bank,* 300 U. S. 440.

We are of opinion that the action of the District Court in permitting the creditor to proceed to a sale for the enforcement of its liens at this stage of the proceeding was contrary to the provisions of § 75(s). That this is so is made plain by our decisions in *Wright* v. *Vinton Branch Bank, supra,* and *John Hancock Ins. Co.* v. *Bartels,* 308 U. S. 180. As was said in the latter case (p. 187):

"The scheme of the statute is designed to provide an orderly procedure so as to give whatever relief may properly be afforded to the distressed farmer-debtor, while protecting the interests of his creditors by assuring the fair application of whatever property the debtor has to

---

[5] *Borchard* v. *California Bank,* 107 F. 2d 96.

the payment of their claims, the priorities and liens of secured creditors being preserved."

That orderly procedure includes an application by the debtor, such as was made in the present case, for an appraisal of the property, an order that the debtor remain in possession upon terms fair and equitable to him and to secured creditors, and the entry of a stay which will assure him of his possession for three years from the date of the order, upon the conditions mentioned in the Act. As a prerequisite to an intelligent determination of the terms under which the debtor is to remain in possession, the statute requires that the court and the parties shall be informed of the fair value of the property. As pointed out in the *Wright* case, *supra,* the secured creditors' rights are protected to the extent of the value of the property. The court may order rent to be paid by the debtor, may order him to make payments on ac- account of principal, and, in its continuing control over the property, may enter any other orders for the protection of the debtor and secured creditors which the situation requires. Failure of the debtor to comply with any such orders may eventuate in a sale.

Instead of prosecuting the cause before the Conciliation Commissioner pursuant to the debtors' petition, the bank resorted to a procedure not contemplated by the statute, evidently on the theory that it could obtain some advantage by that course. By written stipulations the bank consented to the retention of possession by the debtors and arranged that they should coöperate in the cultivation of the farm, proceeds of the crops being used for further cultivation and conservation of the real estate, for payment of taxes, and for payments to the debtors. For more than thirty-one months after the petition for appraisal was filed no action was taken. An appraisal was thereafter made. No stay order has been

entered fixing terms on which the debtors are to remain in possession. The petitioners were entitled to compliance with the procedure required by the statute. The bank, at any time, could have obtained action by the Conciliation Commissioner and the court, in accordance with the statute. It cannot now maintain that the disorderly and unauthorized procedure followed by the parties is the equivalent of that prescribed by the statute and that, as the petitioners have not been able to rehabilitate themselves, it is entitled to enforce its liens.

The judgment is reversed and the cause is remanded for further proceedings in conformity with this opinion.

*Reversed.*