## In re GAMMILL.
### No. 7219.

District Court, E. D. Illinois.

Jan. 6, 1942.

J. E. Dazey, of Findlay, Ill., U. G. Ward, of Shelbyville, Ill., and Elmer McClain, of Lima, Ohio, for debtor.

Robert M. Werden, of Mattoon, Ill., for First Nat. Bank of Lerna, Ill.

Lovell George, of St. Louis, Mo., for Federal Land Bank of St. Louis.

WHAM, District Judge.

The history of this case in brief is as follows: On May 19, 1936, William LeRoy Gammill of Coles County, Illinois, through his attorney, J. E. Dazey, filed his debtor's petition under section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, and on the same day the matter was referred to Robert M. Werden, conciliation commissioner for said county, for proceedings thereon under the statute. The debtor's schedules showed that he owned personal property of an estimated value of $302, consisting of household furniture, livestock, farm equipment, grain and growing crops; that he owned 120 acres of land of a value of $5,000, a 50 acre tract of a value of $1,450 and an undivided one-sixth interest in four town lots in the village of Lerna, Illinois, of a value of $50; that he owed unsecured debts in the amount of $450, taxes in the amount of $140 and that his secured creditors were the First National Bank of Lerna, Illinois, the holder of two judgments in the amount of $1,600 and $1,100 respectively, and the Federal Land Bank of St. Louis, Missouri, the holder of a note for $5,800 secured by a mortgage on said 120 acre tract of land.

Conciliation having failed the debtor filed his petition for adjudication under subsection s on July 28, 1936, and on the same day the debtor was adjudged a bank-

rupt under said section and the matter was referred to said conciliation commissioner for further proceedings. At all the foregoing times no effort was made by any of the creditors, secured or unsecured, to effect a collection of the debtor's obligations through foreclosure, or otherwise. Said creditors respected the jurisdiction of the bankruptcy court and the statutory stay provided in section 75, sub. o.

The debtor filed no petition before, at or subsequent to the first creditors' meeting, which was held after due notice on August 10, 1936, for the appraisal of his property, or to have his exemptions set aside to him, or to be allowed to retain possession of his property or any part of it under the supervision of the court. Nevertheless, on August 10, 1936, the conciliation commissioner appointed appraisers who made the appraisal and filed their report on August 18, 1936, and the commissioner on August 20, 1936 set off to the debtor his exemptions and without being requested to do so permitted the debtor to remain in possession of and to use all the property which he had possessed and used before and during the conciliation period, including the 120 acre tract. It being the latter part of the 1936 farming season at the time of said adjudication no written lease was made with the debtor until April 2, 1937, though rental for 1936 was received by the commissioner. The lease provided for crop rentals for the cultivated lands and cash rental for pasture. The lease by its terms expired March 1, 1938 and though a new lease was discussed between debtor and commissioner none was executed and debtor was permitted to and did continue under the 1937-1938 lease, used the land and accounted for rentals under its terms.

Prior to his bankruptcy the debtor had been leasing the 50 acre tract to a third party who was farming same during the conciliation period. After adjudication the conciliation commissioner continued to lease the 50 acre tract to the same third party. The record is barren of any request on the part of the debtor for possession of said 50 acre tract or right to farm it. He was represented at all times by an attorney who was widely experienced in cases arising under said section 75 and knew well the debtor's rights.

No stay order was entered by the commissioner, as directed by section 75, sub. s (2), staying all judicial or official proceedings in any court, or under the direction of any official, against the debtor or any of his property, for a period of three years. None was requested by the debtor or his attorney. Nevertheless, during the period of conciliation and at all times thereafter, including the three years subsequent to the appraisal of the debtor's property and the setting aside of his exemptions to him, subsection s was administered precisely as if a stay order had been entered and the debtor and the creditors and the commissioner acted as if such stay had been entered. During such period no creditor sought relief in another court and the debtor was given full benefit of subsection s. If he had any complaints concerning the way the estate was being administered by the conciliation commissioner, he never voiced them. He made no complaint that the 50 acre tract was being leased to a third party as it had been before the adjudication. The use of none of the debtor's property was interfered with in any way by any creditor. Certain controversies concerning the continuance of the proceedings arose through petitions of creditors filed before the conciliation commissioner but all of them were decided favorably to the debtor. In all matters the debtor was represented by his attorney, J. E. Dazey, who is widely experienced in cases arising under section 75 of the Bankruptcy Act.

During the three year period Conciliation Commissioner Robert M. Werden resigned and Ogden M. Brainard was appointed and qualified as his successor. The cause was transferred to the successor commissioner after a full report and opportunity on the part of the debtor and all creditors to object to the report. No objections were filed.

On November 17, 1939, the First National Bank of Lerna filed its petition with the conciliation commissioner suggesting the expiration of the three year moratorium period and praying for the appointment of a trustee and the sale of the property or that property of debtor be otherwise disposed of as provided for in the statute, or that the proceedings be dismissed. A hearing was held by the commissioner upon said petition and those present were the debtor in person and by J. E. Dazey, his attorney, the Federal Land Bank of St. Louis by its attorney and the First National Bank of Lerna by its attorney. The conciliation commissioner, after hearing evidence, made a complete report to this court showing the report of his predecessor, his own receipts and disbursements and all steps taken be-

fore him during his administration. He reported that at the aforementioned hearing the debtor had testified that he could not pay into court the fair market value of all of his property; that all of the debtor's personal property which had not theretofore been sold and the proceeds accounted for had been set off as debtor's exemptions; that more than three years had elapsed since the debtor was adjudged a bankrupt; and that the secured indebtedness on all the real estate belonging to the debtor far exceeded its fair market value and that said real estate is a burdensome asset in the estate. He prayed for an order approving his report and directing him to abandon all real estate as being burdensome assets and authorizing or granting leave to all secured creditors to pursue any remedies they might have under the laws of the State of Illinois and ordering the commissioner to pay the balance of the funds to the secured creditors as their interest may appear and to discharge the debtor from bankruptcy and close the estate.

This report of the conciliation commissioner was filed on March 25, 1940. Notice was thereupon given all parties of interest of the substance of the report, together with notice that the report would be approved and confirmed, if no exceptions or objections were filed on or before April 20, 1940. No exceptions or objections having been filed an order was entered by the district court on April 23, 1940, approving and confirming the said report. The order contained the following paragraph:

"Whereupon, it is further ordered by the court, in accordance with the suggestion of said conciliation commissioner, that the secured indebtedness on all real estate belonging to the Debtor herein far exceeds its fair cash market value and that said real estate is a cumbersome asset to said estate; that the said Ogden Brainard, Conciliation Commissioner, abandon all real estate scheduled in this estate and that all secured creditors be authorized or granted leave to pursue any remedies they might have under the laws of the State of Illinois. * * *

"It is further ordered by the court that the said Ogden Brainard, Conciliation Commissioner, be and he is hereby authorized and directed to pay the balance of said funds now in his hands, namely, the sum of $335.22 to the secured creditors as their interests may appear, and upon receiving their Receipt therefor, proceed to discharge the Debtor from bankruptcy, wind up this estate and file with the Court a final report of his acts and doings herein."

Pursuant to said order the conciliation commissioner by his order of June 5, 1940, did abandon said real estate as cumbersome assets and granted said secured creditors leave to pursue any remedies they might have under the laws of Illinois.

Neither this court nor the conciliation commissioner received any protest from the debtor or his attorney against the above-mentioned orders until a year and three months after the abandonment of the said property, namely on September 9, 1941, when the debtor filed his petition now before the court wherein he seeks an order, first, restraining the First National Bank of Lerna and the Federal Land Bank of St. Louis from taking any action whatsoever in the state courts of Illinois, and from taking any deed, paper or document which would cast a cloud upon debtor's title to the real estate, second, declaring void all proceedings and actions had or taken in any and all state courts, third, granting a rehearing on said petition of First National Bank of Lerna filed November 17, 1939 and all orders of the conciliation commissioner and this court pursuant thereto and "any other order, action, or proceeding; which may be in conflict with the complete administration of this cause as provided by law, or which may be in conflict with said farmer debtor's opportunity to have the benefits of the moratorium provided by law, or in conflict with his right and opportunity to redeem any or all of his said real estate either by paying its appraised or reappraised value prior to any public auction conducted by this court, or thereafter, all as provided by statute."

Under the last portion of bankrupt's prayer above quoted it is contended by his counsel that since no stay order was actually entered following the appraisal of bankrupt's property and the setting aside to him of his exemptions the moratorium period never did begin to run and he is now entitled to have the order of abandonment set aside, to be restored to possession of his property, to have a stay order entered declaring another three year moratorium after which he should have opportunity to redeem the land at its appraised or reappraised value. It is not suggested in the bankrupt's brief that if he were now given opportunity to redeem the land at its appraised or reappraised value that he would be able to do so. It would appear that he

desires the additional three year moratorium to endeavor to prepare himself to make such redemption and failing in this he would at least have had the additional use of the land.

To complete the picture it should be stated that the conciliation commissioner filed a further report on October 1, 1941, showing all lands abandoned under said order of court on June 5, 1940, all funds finally paid out on September 20, 1940, an order on September 29, 1941 fixing October 31, 1941 as last day for filing objections to discharge of bankrupt and notices to creditors of said order mailed on same day. The estate has not been finally closed. All that remained to be done in the estate, at the time the petition now before the court was filed on September 9, 1941, was the discharge of the bankrupt, the filing of commissioner's final report and action thereon.

It seems to me that the appraisal of defendant's property, the setting aside to him of his exemptions and the arrangement whereby bankrupt was left in possession of and given the actual use of all the property he was himself farming and using prior to bankruptcy started the three year moratorium period not later than August 20, 1936, the date his exemptions were set off to him after report of appraisers filed on August 18, 1936. This result is not affected by the failure to enter a stay order for the reason that the absolute jurisdiction of this court was recognized by bankrupt and creditors alike at all times during the pendency of the entire proceeding as if a stay order had been entered. There is some language of the Supreme Court in the case of Borchard v. California Bank, 310 U.S. 311, at page 318, 60 S.Ct. 957, 84 L.Ed. 1222, which would seem to lay down the rule that a stay order is necessary to initiate the moratorium period but that language must be considered in the light of the facts in that case. There, in the absence of a stay order, the secured creditor invaded the possession of the bankrupt and fairly took the case out of the hands of the bankruptcy court. In the later case of Wright v. Union Central Life Insurance Co., 311 U.S. 273, at page 275, 61 S.Ct. 196, at page 198, 85 L. Ed. 184, Justice Douglas, in stating the case used this significant language: "* * * it does not appear whether the debtor asked for an appraisal under § 75, sub. s which it is the duty of the court to make on such request and in which event the three-year stay provided for in § 75, sub. s (2), may start to run only after such appraisal has been made." While this language is declarative of no rule it does recognize some responsibility on the part of the bankrupt. In the instant case the bankrupt, though represented by attorney, made no request for an appraisal or for exemptions or for possession of property, yet the commissioner gave him all of these things. I find no case and none has been cited in which a stay order has been held requisite to start the moratorium period where the estate has been fully administered through the bankruptcy court under section 75 up to time for payment into court of appraised value or for liquidation in substantial accord with its provisions without interference by creditors and without complaint by bankrupt.

The recommendation of the commissioner in his report of March 25, 1940 that in view of bankrupt's inability to pay into court the market value of his land and the land being encumbered far beyond its worth that he be authorized to abandon the land was probably based upon the opinion of this court in the case of In re Ashworth, D.C., 31 F.Supp. 52, in which it was held that this procedure was proper under section 75, sub. s (3). At the time that case was decided it was believed that the authority of the court to "order the property sold *or otherwise disposed of as provided for in this Act (title)*" (italics mine) whenever the bankrupt was unable to refinance himself within three years was ample to justify an abandonment of burdensome property under well-established bankruptcy practice to save costs. It was deemed that a bankrupt was unable to rehabilitate himself whenever the evidence showed that he would be unable to pay the appraised value of the property at the conclusion of the three year period or within the period for redemption thereafter.

The report of the conciliation commissioner, though it does not contain a specific finding that the bankrupt would be unable to refinance himself by paying into court the appraised value of the property as provided by statute, does find that the bankrupt would be unable to pay into court the market value of the property. This was accepted by all as a finding that the bankrupt could not refinance himself. It did appear that all of the property was encumbered far beyond its value and would be burdensome to administer.

In the absence of any suggestion or claim by the bankrupt, though in court, that he would be able to redeem the land if sold or that he desired an opportunity to do so, or that he could pay the appraised value into court, and in the absence of any objection to the report, after notice, this court by order gave the commissioner the authority he sought to abandon the land as cumbersome which the commissioner did by his order of June 5, 1940. Properly speaking, the order of this court added nothing to the authority of the conciliation commissioner as the proper procedure would have been for him to act on the petition of the First National Bank of Lerna without the direction of the district court and permit the bankrupt to seek relief from the order by petition for review, if dissatisfied. Nevertheless, the aforesaid procedure was followed, the bankrupt made no objection, took no appeal from the order of the commissioner of June 5, 1940 abandoning said property. At no time did he seek nor was he denied opportunity to pay into court the amount of the appraisal of any of the property less the amount paid on the principal, though the three year period had expired. No request was made for a reappraisal and opportunity to pay in the reappraised price. Though bankrupt's attorney was attorney for the bankrupt in the case of In re Ashworth, supra, and knew the views of this court upon the authority of the bankruptcy court to abandon burdensome property under section 75, sub. s (3) when the bankrupt was unable to refinance himself within the moratorium period by paying the appraisal value of the property into court at the end of the period, though present at the hearing with the bankrupt and participating therein, he made no suggestion that the bankrupt should have the privilege of paying the appraised value of the land into court or of redeeming the land after sale under any of the provisos of section 75, sub. s (3) but seemingly acquiesced in the recommendations of the commissioner that the property be abandoned as burdensome. In truth, it appeared to all and to this court that the bankrupt would have a much longer time to occupy the land and to redeem the land if sold under the state laws than if sold in the bankruptcy proceeding and that this procedure would be of distinct advantage to the bankrupt. This consideration no doubt influenced both the bankrupt and his attorney in their decision to make no objection to the commissioner's report or to his action thereafter in abandoning the land. But when the expiration of time for redemption from the sales under the state laws drew near more than a year later the present petition was filed.

It should be noted that in this case *all* of the property which the bankrupt had was encumbered beyond its value and was undoubtedly burdensome In the absence of the ability of the bankrupt to pay into court the appraised value of the land or any request on his part for leave to do so it would seem that the abandonment of the property was the sensible thing to do from a standpoint of economic administration and within the meaning of the language "or otherwise disposed of as provided for in this Act [title]." Such procedure in this case was obviously for the benefit of the bankrupt as it gave him a longer period within which to work out a means of redemption. The creditors are not seeking relief from the procedure. I am aware of the subsequent decisions of the Supreme Court and of the Circuit Court of Appeals of this Circuit which cast doubt upon the propriety of the procedure but in none of those cases were the facts similar to the situation here presented which made abandonment both fair and within recognized bankruptcy procedure.

In any event, the order of abandonment was entered by the conciliation commissioner on June 5, 1940, and a petition for review has not been filed to this day. Obviously, a reasonable time within which to file such petition expired long since.

When bankrupt and his attorney knew that the land was being abandoned and the secured creditors given leave to pursue their remedies in the state court, thus removing the land from the jurisdiction of this court and subjecting it to the jurisdiction of state courts, it was certainly their duty to act with reasonable promptness if they wished to obtain a review of the commissioner's order of abandonment. Whether or not that order was erroneous, and I do not believe that it was, I am of opinion that it has long since become final and the bankrupt's petition must be and is denied. Union Joint Stock Land Bank v. Byerly, 310 U.S. 1, 60 S.Ct. 773, 84 L.Ed. 1041; Bernards v. Johnson, 314 U.S. 19, 62 S.Ct. 30, 86 L.Ed. ——, decided November 10, 1941.

As matter of course, without established objection, the bankrupt is entitled to his

discharge and the creditors are not entitled to pursue any deficiency judgment against him.·