### In re FEIL et ux.
### No. B–8299.

District Court, E. D. Washington, N. D.

Aug. 15, 1942.

Thomas A. E. Lally, of Spokane, Wash., for petitioning creditor Farm Deposit Ins. Corporation.

A. J. Hensel, of Waterville, Wash., for farm debtors.

SCHWELLENBACH, District Judge.

This is an appeal from the decision of the Conciliation Commissioner denying the motion of the Federal Deposit Insurance Corporation for the dismissal of the petition of the farm debtors under Section 75, subs. a–r of the Bankruptcy Act, 11 U.S.C.A. § 203, subs. a–r or, in the alternative, to strike from the alleged assets of the farm debtors the property on which the Federal Deposit Insurance Corporation has foreclosed its mortgage.

This motion was based on several contentions all but one of which were decided adversely to the appellant at the time this matter was presented orally to the court. The one remaining question is this: Assuming that the money and credit secured by the farm debtors from the appellant's

predecessor bank was obtained "upon a materially false statement in writing made by him to any person or his representative for the purpose of obtaining credit from such person" so as to have prevented the granting of a discharge to these debtors under the provisions of Section 14 of the Bankruptcy Act, 11 U.S.C.A. § 32, sub. b 3, would such fact bar these farm debtors from access to the relief provided by Section 75, subs. a–r and 75, sub. s of the Bankruptcy Act? Diligent research by counsel and by me enables me to state that no court has ever decided this question. The answer, however, can be found in a review of the statutes themselves.

It is unnecessary to recite the history of the financial situation of farmers and of others in the United States during the period from 1930 to 1934, inclusive. It was in a state of almost total collapse. On March 3, 1933, the Congress attempted to meet the problem by amplification of Section 12 of the Bankruptcy Act, 11 U.S.C.A. § 30, which dealt with the right of extension but not of scaling of secured debts. Congress amended the Bankruptcy Act by adding thereto Chapter VIII, 11 U.S.C.A. § 201 et seq. The substantive portions of that Chapter were contained in Sections 74 and 75, 11 U.S.C.A. §§ 202, 203. 47 Stat. Part 1, p. 1467. Section 74 was permanent legislation which later found its way into the Chandler Act and is now known as the Chapter entitled "Arrangements." 11 U.S.C.A. § 701 et seq. This section was general in its nature and applied to all debtors. Section 75 applied exclusively to farmers. Its span of life was limited to five years. It was written into the law out of recognition of the peculiarly difficult problems with which farmers were confronted. It did not find its way into the Chandler Act despite efforts to include it and it still remains upon the statutes as temporary legislation to expire in 1944. Both Sections 74 and 75 provided for compositions and extensions and required confirmation of such agreements by the court. The standards set up in each of the sections to be used by the court in determining whether it should confirm the agreement are practically identical except only that in Section 74 is there the requirement "that the debtor has not been guilty of any of the acts, or failed to perform any of the duties, which would be a ground for denying his discharge."

Consequently, it must be concluded that so far as the operation of Section 75 is concerned, the Congress did not intend compliance with Section 14 of the Bankruptcy Act to be a condition precedent to the opportunity for relief under the provisions of that Section. I not only have the right but also the duty to look to the entire statute in ascertaining the intent of the Congress as to any part of it. Kohlsaat v. Murphy, 96 U.S. 153, 24 L.Ed. 844; Alexander v. Cosden Pipe Line Co., 290 U.S. 484, 54 S.Ct. 292, 78 L.Ed. 452; Blackton v. Gordon, 303 U.S. 91, 58 S.Ct. 417, 82 L.Ed. 683; Nashville, C. & St. L. Ry. v. State of Tennessee, 262 U.S. 318, 43 S.Ct. 583, 67 L.Ed. 999; Marshall v. Andrew F. Mahony Co. et al., 9 Cir., 56 F.2d 74.

The so-called Frazier-Lemke Act, adopted June 28, 1934, and declared unconstitutional in Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106, and the second Frazier-Lemke Act enacted August 28, 1935, 11 U.S.C.A. 203, sub. s, were simply additions to Section 75 enacted in 1933. It is true that the 1935 Act took advantage of the constitutional powers of the Congress to enact uniform bankruptcy laws but, as was said by Senator Borah who was in charge of the bill in the Senate, Congressional Record Vol. 79, Part 13, p. 13632:

"Mr. President, the measure is here by reason of the decision of the Supreme Court on what is known as the Frazier-Lemke bankruptcy measure which was passed at the last session.

"The Supreme Court held a portion of that act, subsection s, unconstitutional. The purpose of the bill is to avoid the objectionable features of the former act as they were denounced by the Supreme Court.

"In the first place, however, it ought to be said that we undertook to make some amendments in section 75 before we got to subsection s. These amendments are for the purpose of clarifying section 75. Some of the courts have held that the farmer debtor could not take advantage of the act after foreclosure sale and during the period of redemption. The bill undertakes to clarify it so as to permit the farmer to take advantage of section 5 (75) after foreclosure and during the period of redemption.

"Some of the courts also refused to permit the farmer who was in that position

to file his petition, although under the law of the State he was in possession and full control of the property and could redeem it during the period of moratorium established by the States. One of the amendments to section 5 (75) takes care of that objection which was raised by the court.

"Amended subsection s, construes, interprets, and clarifies both subsections n, and o, of section 5 (75). By reading subsections n and o, as now enacted, it becomes clear that it was the intention of Congress, when it passed section 75, that the debtor and all of his property should come under the jurisdiction of the court of bankruptcy, and that the benefits of the act should extend to the farmer prior to confirmation of sale and during the period of redemption."

■ The colloquy that followed on the Senate floor when considered in conjunction with the opinion of the Supreme Court in Wright v. Logan et al., 315 U.S. 139, 62 S.Ct. 508, 86 L.Ed. ——, decided Feb. 2, 1942, makes clear the inseparable connection between Section 75, subs. a–r and Section 75, sub. s. Since the Congress purposefully distinguished between the relief to ordinary debtors and the relief to agricultural debtors in the adoption of the original act, that same distinction must be carried through in construing the various amendments to the act.

That there was such a distinction in the original act was not unknown to the Congress. During the fall of 1937 and the spring of 1938, the Congress had before it the adoption of the so-called Chandler Act and the question as to whether or not Section 75, subs. a–s should be extended beyond the date of its then statutory life which expired March 3, 1938, and, if so, whether it should be made permanent and included along with the statutes on arrangements, 11 U.S.C.A. § 701 et seq., the provisions for corporate reorganizations, 11 U.S.C.A. § 501 et seq., and the provisions for the relief of local taxing agencies, 11 U.S.C.A. § 401 et seq. A hearing was held starting December 17, 1937, before the House Committee on the Judiciary, presided over by Congressman Chandler. At that hearing, extended discussion was given by Mr. Jacob I. Weinstein, an attorney at law of Philadelphia. Mr. Weinstein was no ordinary witness. He was introduced to the committee by Congressman Chandler who said this: "I took the liberty of inviting his opinion on this legislation and believe it will be very helpful to the committee if he will now give us his judgment. He has prepared a full and exhaustive statement at my request. Mr. Weinstein came here somewhat reluctantly, and I would like very much to have his help." The thesis of Mr. Weinstein's analysis and argument was that Section 75, subs. a–s should not be made permanent. One of the reasons he gave for reaching that conclusion was the fact that, as he said,

"Section 75 omits the grounds of objection to a discharge as grounds of objection to the confirmation of a proposal. Chapter XI, section 366(4), 11 U.S.C.A. § 766(4), following section 12 of the act, retains this bar.

"These discharge objections may be briefly summarized as (1) the commission of a criminal offense under the act, (2) the destruction, etc., of books, etc., or failure to keep proper books, (3) the obtaining of credit on false financial statements, (4) the concealment, etc., of assets, (5) the refusal to obey lawful orders of the court, (6) the failure to account for losses of assets or deficiency of assets and (7) the obtaining of a discharge or the effecting of a composition within 6 years prior to the proceeding. Of these grounds, all except '(7)' are predicated upon misconduct of the debtor, ranging from the refusal to obey a lawful order to the commission of a crime under the act. There is no apparent reason for exempting the farmer from accountability for his misconduct. In regard to the seventh objection, it is of course understandable, in connection with the emergency relief, that this bar should have been omitted; but, for the purposes of a permanent law, it should be applicable to every type of debtor, whether he be a farmer, a wage earner, or a merchant." (See Hearings before Special Committee on Bankruptcy of the Committee on the Judiciary, 75th Congress, Second and Third Sessions, on S. 2215 and H.R. 6452, Serial 13, page 22.)

The importance of this testimony comes from the fact that the committee accepted Mr. Weinstein's recommendation to the extent that it did not incorporate Section 75, subs. a–r as a part of the permanent Chandler Act but merely extended the life of that Section for a period of two years. Despite the fact that this witness pointed out to the committee the inconsistency in

the treatment of farm debtors and other debtors, the Act was not amended so as to cure this inconsistency.

■ Furthermore, in my opinion, the decision in this and other cases involving this statute must give consideration to the attitude of the Supreme Court in the cases of John Hancock Mutual Life Insurance Co. v. Bartels, 308 U.S. 180, 60 S.Ct. 221, 84 L.Ed. 176; Borchard v. California Bank, 310 U.S. 311, 60 S.Ct. 957, 84 L.Ed. 1222; Wright v. Logan et al., supra. The philosophy of the Supreme Court in deciding questions involving the interpretation of the act was expressed in Wright v. Union Central Life Insurance Co., 311 U.S. 273, 279, 61 S.Ct. 196, 200, 85 L.Ed. 184, when it said: "the Act must be liberally construed to give the debtor the full measure of the relief afforded by Congress * * * lest its benefits be frittered away by narrow formalistic interpretations which disregard the spirit and the letter of the Act."

The action of the Conciliation Commissioner is affirmed.