**COREY et al. v. BLAKE.**

No. 10261.

Circuit Court of Appeals, Ninth Circuit.

May 24, 1943.

Rehearing Denied July 9, 1943.

Alfred Aram, of San Jose, Cal., for appellants.

Rea, Free, Jacka & Frasse, E. M. Rea, A. M. Free, W. W. Jacka, and I. A. Frasse, all of San Jose, Cal., for appellee.

Before MATHEWS, STEPHENS, and HEALY, Circuit Judges.

MATHEWS, Circuit Judge.

Appellants, husband and wife, were at all pertinent times farmers and residents of Santa Clara County, California. Appellee was at all pertinent times the holder of appellants' matured note secured by a deed of trust on 21.303 acres of land owned by appellants in Santa Clara County.

On May 26, 1938, appellants filed in the District Court of the United States for the Northern District of California a petition stating that they were unable to meet their debts as they matured, and that they desired to effect a composition or extension under § 75 of the Bankruptcy Act, 11 U.S. C.A. § 203. The petition was approved as properly filed, and the case was referred to the conciliation commissioner for Santa Clara County. On November 7, 1938, appellants filed an amended petition, stating that they had failed to obtain acceptance of a composition or extension proposal, and asking to be adjudged bankrupts under subsection s of § 75. They were so adjudged on November 8, 1938.

On January 7, 1942, appellee petitioned the court to order the appointment of a trustee and to order a sale of the above mentioned land. Appellants answered, praying that appellee's petition be denied. On April 18, 1942, the conciliation commissioner, acting as referee,[1] ordered the appointment of a trustee and a sale of the land. Appellants petitioned for review of the order. The court reviewed the order and entered judgment affirming it. From that judgment this appeal is prosecuted.

The question is whether the orderly procedure which subsection (s) is designed to provide (John Hancock Mutual Life Ins. Co. v. Bartels, 308 U.S. 180, 187, 60 S.Ct. 221, 84 L.Ed. 176; Borchard v. California Bank, 310 U.S. 311, 316-318, 60 S.Ct. 957, 84 L.Ed. 1222) was followed in this case.

Subsection s provides that a farmer-debtor who amends his petition and asks to be adjudged a bankrupt may, at the same time, "petition the court that all of his property, wherever located, whether pledged, encumbered, or unencumbered, be appraised, and that his unencumbered exemptions, and unencumbered interest or equity in his exemptions, as prescribed by State law, be set aside to him, and that he be allowed to retain possession, under the supervision and control of the court, of any part or parcel or all of the remainder of his property, including his encumbered exemptions, under the terms and conditions set forth in this section." Appellants did so petition the court.[2]

Subsection s further provides: "Upon such a request being made, the referee,[3] under the jurisdiction of the

---

[1] Conciliation commissioners are referees. See subsection a of § 75. Paragraph (4) of subsection s provides: "The conciliation commissioner * * * shall continue to act, and act as referee, when the farmer debtor amends his petition * * * asking to be adjudged a bankrupt * * * and continue so to act until the case has been finally disposed of."

[2] Appellants' amended petition prayed "that they and each of them be adjudged bankrupt; that all their property, whereever located, whether pledged, encumbered or unencumbered, be appraised; that all their unencumbered exemptions and unencumbered interest or equity in such exemptions, as prescribed by State law, be set aside to them, and that they be allowed to retain possession of, under the supervision and control of the court, all or such portion or parcel of the real property which may be determined at the first hearing, together with their en-cumbered exemptions; that after the value of their properties shall have been fixed by such appraisal, the referee make and issue an order setting aside to them their unencumbered exemptions and their unencumbered interest or equity in such exemptions, as prescribed by State law; and make the further order that the possession of such portion of the real property as they may choose to retain remain in [appellants] for the period of three (3) years, under the supervision and control of the court, subject to all existing mortgages, liens, pledges, or encumbrances; make such further orders and have such further proceedings as may be meet and proper and in accord with the provisions of subsection s of section 75 of the Bankruptcy Act, and for general relief."

[3] The "referee" here referred to is the conciliation commissioner. See footnote 1.

164

court, shall designate and appoint appraisers, as provided for in this Act."[4] Thus, upon the filing of appellants' amended petition, it became the duty of the commissioner to appoint three disinterested appraisers. The appointment should have been made in writing, and each appraiser should have been sworn.[5] We have had transmitted to us, and have examined, the entire record in this case, including that of the commissioner. The record contains no appointment or oath of any appraiser. We conclude that no appraiser was appointed.

Subsection s further provides: "Such appraisers shall appraise all of the property of the debtor, wherever located, at its then fair and reasonable market value." Thus, when appraisers shall have been appointed as provided for in subsection s, it will be their duty to appraise all of appellants' property, wherever located, at its then fair and reasonable market value. That appraisal cannot be made until appraisers shall have been appointed.

Subsection s further provides: "The appraisals shall be made in all other respects with rights of objections, exceptions, and appeals, in accordance with this Act: Provided, That in proceedings under this section, either party may file objections, exceptions, and take appeals within four months from the date that the referee approves the appraisal." Thus, when an appraisal of appellants' property shall have been made as provided for in subsection s, appellants and their creditors will have "rights of objections, exceptions, and appeals" as therein provided. These rights cannot be exercised until such an appraisal shall have been made.

There is in the record a paper which the commissioner, in his certificate on petition for review, called an appraisal. A copy of the paper was attached to the certificate and was labeled "Appraisal of debtors' property, with approval of conciliation commissioner on stipulation of parties, dated Dec. 30, 1938." The paper itself bears no such label. It reads as follows:

"In the District Court of the United States for the Northern District of California, Southern Division. In the matter of Joseph Corey and Mary Corey [appellants], husband and wife, debtors. No. 30,298-S.

"We, the appraisers duly appointed by the court to appraise property for the conciliation commissioner of Santa Clara County, do hereby make our report in the above entitled matter.

| "Real estate   21 acres | $7,350.00 |
|---|---|
| Improvements | 2,000.00 |
| Total | $9,350.00 |
| Live stock | 470.00 |
| Farming implements | 45.00 |
| Chickens | 25.00 |
| Household furniture | 150.00 |

"[Signed]   Chas. J. Moore
              J. A. Chargin
              R. V. Garrod."

The paper bears no date. We do not know when it came into existence. It may have existed prior to the filing of appellants' amended petition. Its signers (Moore, Chargin and Garrod) call themselves "appraisers appointed by the court to appraise property for the conciliation commissioner of Santa Clara County," but they do not say that they were appointed under subsection s, or that they were appointed in this case, or that they were appointed by the commissioner to whom this case was referred, or that they were appointed to appraise appellants' property. If they had been so appointed, their appointment and oath undoubtedly would have accompanied their report[6] and would have been in the record. The absence of any such appointment or oath is convincing evidence that they were not so appointed. It is furthermore significant that neither the commissioner nor appellee has disputed the assertion that appellants' property was not appraised "by any duly appointed appraisers." That assertion was made in appellants' answer to appellee's petition, and remains unchallenged. We conclude that Moore, Chargin and Garrod were not appraisers, and that the paper they signed was not an appraisal within the meaning of subsection s.

---

[4] Section 70, sub. b of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. b, prior to the amendment of June 22, 1938, provided: "All real and personal property belonging to bankrupt estates shall be appraised by three disinterested appraisers; they shall be appointed by, and report to, the court."

[5] See General Order in Bankruptcy No. 37 and Form No. 13 (now replaced by Form No. 12), 11 U.S.C.A. following section 53.

[6] See Form No. 13 (now replaced by Form No. 12), 11 U.S.C.A. following section 53.

The paper signed by Moore, Chargin and Garrod bears the following endorsement signed by the commissioner: "Approved and accepted by stipulation of parties & counsel Dec. 30, 1938." There was no order (other than the endorsement itself) approving or purporting to approve the paper. In a "record book" kept by the commissioner, the following entry relating to this case was made on December 30, 1938: "Mr. Chargin examined on appraisal. * * * $9,350.00 of court appraisal stipulated to by counsel." On January 4, 1939, the commissioner stated[7] that on December 30, 1938, pursuant to notice theretofore given all creditors of appellants,[8] a meeting was held for the purpose of considering an appraisal of appellants' property and for other purposes; that the meeting was attended by appellants' counsel, by one of the appellants, by appellee's counsel and by appellee; that no other creditor attended the meeting; and that—

"The court[9] presented to the respective counsel the official appraisal returned in this matter, showing the appraisal as is on file herein. Both the secured creditor present [appellee] and the debtors [appellants], through their respective counsel, stipulated that the appraisal returned by the official appraisers appointed by this court, be and is the value of the property of the debtors, and the court thereupon approved and adopted said appraisal."

▪ We assume that the "appraisal" referred to by the commissioner was the paper signed by Moore, Chargin and Garrod,[10] for no other appraisal or purported appraisal of appellants' property was ever made. The commissioner's reference to "official appraisers" is meaningless, for the record shows no appointment of appraisers, "official" or otherwise. We assume that the stipulation referred to by the commissioner was an oral one, for the record shows no written stipulation. We accept as true the commissioner's statement concerning the stipulation, and hence conclude that his approval of the paper was consented to by appellants and appellee. We assume that the endorsement evidencing that approval was an order, and was reviewable. Actually, it was not reviewed or sought to be reviewed. The time within which review might have been sought expired long ago.[11] Hence the commissioner's approval of the paper cannot be reviewed on this appeal.

▪ But, although we may not review that approval, we may consider its effect, if any. We think it had no effect whatever; for since Moore, Chargin and Garrod, so far as the record shows, were never appointed or sworn as appraisers, the paper they signed could not, we think, be deeme an appraisal within the meaning of subsection s; nor do we think the commissioner's approval could or did transform the paper into something it was not.

Paragraph (1) of subsection s provides: "After the value of the debtor's property shall have been fixed by the appraisal herein provided, the referee shall issue an order setting aside to such debtor his unencumbered exemptions, and his unencumbered interest or equity in his exemptions, as prescribed by the State law, and shall further order that the possession, under the supervision and control of the court, of any part or parcel or all of the remainder of the debtor's property shall remain in the debtor, as herein provided for, subject to all existing mortgages, liens, pledges, or encumbrances." Thus, when appellants' property shall have been appraised as provided for in subsection s, it will be the duty of the commissioner (a) to issue an order setting aside to appellants their unencumbered exemptions, and their unencumbered interest or equity in their exemptions, as prescribed by State law, and (b) to order that the possession, under the supervision and control of the court, of some part or parcel or all of the remainder of appellants'

---

[7] The commissioner's statement accompanied his order of January 4, 1939, hereinafter discussed.

[8] Appellants had five creditors—appellee and four others.

[9] Meaning the commissioner.

[10] The commissioner's certificate on petition for review stated that an "appraisal" of appellants' property was returned prior to January 4, 1939; that said "appraisal" was reviewed and approved; and that a copy of said "appraisal" was attached to and made part of the certificate. The copy so attached was a copy of the paper signed by Moore, Chargin and Garrod.

[11] Section 39, sub. c of the Bankruptcy Act, 11 U.S.C.A. § 67, sub. c, provides: "A person aggrieved by an order of a referee may, within ten days after the entry thereof or within such extended time as the court may for cause shown allow, file with the referee a petition for review of such order by a judge."

property shall remain in appellants, as provided for in subsection s, subject to all existing mortgages, liens, pledges or encumbrances. The commissioner has not made or issued either of these orders,[12] and cannot do so until appellants' property shall have been appraised.

Paragraph (2) of subsection s provides: "When the conditions set forth in this section have been complied with, the court shall stay all judicial or official proceedings in any court, or under the direction of any official, against the debtor or any of his property, for a period of three years. During such three years the debtor shall be permitted to retain possession of all or any part of his property, in the custody and under the supervision and control of the court, provided he pays a reasonable rental semiannually for that part of the property of which he retains possession." Thus, when the orders required by paragraph (1) shall have been made, it will be the duty of the commissioner to make the order required by paragraph (2), namely, an order staying all judicial or official proceedings in any court, or under the direction of any official, against appellants or any of their property, for a period of three years. The commissioner has not made that order and cannot do so until the orders required by paragraph (1) shall have been made. He did, however, make the following order dated January 4, 1939:

"The court hereby orders and grants to the debtors [appellants] herein the statutory moratorium[13] for three years from and after the date of this order, and in pursuance therewith and in accordance with the provisions of the law, except upon petition made to and granted by the District Judge, after hearing and report by the conciliation commissioner, any of the proceedings as enumerated and set out in subsection o and p[14] of section 75 of the Bankruptcy Act and amendments thereto, shall not be had against these debtors or any of them or of their property during said statutory moratorium of three years, * * *.

"It is further ordered that during the said three years the debtors pay to the court as a rental Five Hundred Twenty-Five and no/100 ($525.00) Dollars per year.[15] The first rental shall be payable on or before one (1) year from this date. All such rentals shall be payable to the conciliation commissioner in and for [Santa Clara] County."

■ The order was unauthorized and improper. It did not conform to the requirements of paragraph (2)[16] and, if it had done so, would have been premature, for the orders required by paragraph (1) had not been made, and have not yet been made.

Paragraph (3) of subsection s provides: "At the end of three years,[17] or prior thereto, the debtor may pay into court the amount of the appraisal of the property of which he retains possession,[18] including the amount of encumbrances on his exemptions,[19] up to the amount of the appraisal, less the amount paid on principal: * * * and thereupon the court shall, by an order,

---

[12] The commissioner stated on January 4, 1939, that he had on December 30, 1938, set aside certain exemptions to appellants. The statement is incorrect. No order setting aside or purporting to set aside exemptions to appellants was issued on December 30, 1938, or at all. The commissioner did not state, nor is it a fact, that he at any time ordered the possession of appellants' property, or any part or parcel thereof, to remain in appellants.

[13] Paragraph (2) provides for a stay. It says nothing about a moratorium.

[14] Subsections o and p have nothing to do with the case, and have had nothing to do with it since November 8, 1938, when appellants were adjudged bankrupts under subsection s.

[15] Paragraph (2) provides for payment of "a reasonable rental semiannually for that part of the [debtor's] property of which he retains possession." The

order requires payment of an annual rental of $525, which may or may not be reasonable. The order says nothing about reasonableness. It does not even say what the rental is for. We cannot assume that it is for that part of appellants' property of which they retain possession; for, to date, there has been no order allowing appellants to retain possession of any part of their property. Whether or not such possession is in fact retained by them the record does not show.

[16] See footnotes 13-15.

[17] From and after the stay order required by paragraph (2). In this case, no such order has been made.

[18] In this case, there has been no appraisal nor any order for the retention of property.

[19] In this case, no order setting aside exemptions has been issued.

turn over full possession and title of said property, free and clear of encumbrances to the debtor: * * * If, however, the debtor at any time fails to comply with the provisions of this section[20] or with any orders of the court made pursuant to this section, or is unable to refinance himself within three years, the court may order the appointment of a trustee, and order the property sold or otherwise disposed of as provided for in this Act." Appellee's petition for the appointment of a trustee and for a sale of appellants' land was based on the last above quoted provision of paragraph (3).

■ Appellee's petition did not allege that appellants had failed to comply with the provisions of § 75, or with any order of the court made pursuant to that section, or that they were unable to refinance themselves within three years. It did allege, in substance, that appellants had failed to comply with an order which (it alleged) was made by the commissioner on December 30, 1938, and which (it alleged) required appellants to pay a rental of $500 a year. There was no such order. The only rental order ever made in this case was the above quoted order of January 4, 1939. That order was not authorized by § 75 and hence was not an order made pursuant thereto.

■ Thus, instead of following the orderly procedure which the statute was designed to provide (John Hancock Mutual Life Ins. Co. v. Bartels, supra; Borchard v. California Bank, supra), the commissioner followed a disorderly and unauthorized procedure. Cf. Borchard v. California Bank, supra. In the course of, and as part of, that disorderly and unauthorized procedure, the commissioner made his order of December 30, 1938,[21] his order of January 4, 1939, and his order of April 18, 1942. Appellee could have prosecuted the case before the commissioner and could have required the commissioner to proceed in accordance with the statute. Instead, he consented to the order of December 30, 1938, acquiesced in the order of January 4, 1939, and procured the order of April 18, 1942. He therefore cannot disclaim responsibility for the disorderly and unauthorized procedure followed by the commissioner, nor can he maintain that such procedure is the equivalent of that pre-scribed by the statute. Borchard v. California Bank, supra.

Judgment reversed and case remanded with directions to reverse the commissioner's order of April 18, 1942, and require the commissioner to proceed in accordance with subsection s of § 75 of the Bankruptcy Act.

HEALY, Circuit Judge (dissenting).

I am unable to agree that appellants have not had the benefit of the orderly procedure prescribed by subsection s of § 75 of the Act. The fullness with which the facts have been set out makes it possible in brief compass to state the reasons for my dissent.

The Act does not in terms require that the appointment of appraisers be in writing or that the oath administered be in writing. It is true that the General Orders contemplate a written appointment and oath, but it can hardly be thought that the failure, if any, to follow these forms renders the whole proceeding abortive. The appraisal certificate recites that the appraisers were "duly appointed," and the recitals in the referee's order endorsed thereon as well as in his order made five days later show that the appraisal was approved. More than that, they show that the debtors themselves agreed that it was correct. I suppose the presumption of regularity attends the conduct of bankruptcy proceedings as well as trials generally, and without at all doing violence to the record before us we may presume that the appraisers were regularly appointed and sworn, even that Form No. 13 was meticulously followed. It appears probable, indeed, from the form of their certificate, that these were standing appraisers appointed by the conciliation commissioner to act generally in cases referred to him under the statute.

The referee's order of January 4, 1939, granting to the debtors the "statutory moratorium," while perhaps inartificially drawn, was intended to give, and I think in substance gave, the statutory stay of three years during which the debtors were entitled to remain in possession of the encumbered real estate. That order fixed the rental to be paid by the debtors as the statute requires, and it is at least inferable that the rental fixed was deemed by the referee to be reasonable.

---

[20] Section 75 of the Bankruptcy Act.

[21] Approving the paper signed by Moore, Chargin and Garrod.

The debtors failed within the statutory period to comply with paragraph (3) of subsection s by paying into court the appraised value of the encumbered real property of which they were permitted to retain possession. They made no application for re-appraisal within the period, and indeed have made none now. The time prescribed by the statute had elapsed prior to the filing of the petition of the secured creditor, and I think no error was committed in directing the sale.

If the proceedings before the many commissioners appointed under this statute are to be subjected on appeal to microscopic scrutiny and their validity questioned on grounds so tenuous as those on which the main opinion proceeds, I doubt that anything these officers do can escape condemnation. The concern of the Supreme Court in respect of the administration of the statute relates to matters of substance, not of form.