## In re CASAUDOUMECQ.

### No. 33390.

United States District Court,
S. D. California, Central Division.

Nov. 24, 1952.

O. T. Gilbank, Los Angeles, Cal., for trustee.·

Charles A. Thomasset, Los Angeles, Cal., for bankrupt.

YANKWICH, Chief Judge.

The bankrupt, Jean Casaudoumecq, a farmer, filed his petition for agricultural composition and extension under Section 75 of the Bankruptcy Act of 1938, 11 U.S. C.A. § 203, on December 5, 1938. The petition was approved on January 6, 1939. A great variety of proceedings were had in the case, which is still pending.

The petition was amended, an adjudication in bankruptcy was made, and a trustee appointed on October 15, 1947, under Section 75, sub. s of the Bankruptcy Act, 11 U.S.C.A., § 203, sub. s.

On April 24, 1952, Henry D. French, the trustee, filed his petition to sell three parcels of real estate belonging to the bankrupt. The petition alleged that the property had been appraised on April 12, 1952, by an appraiser appointed by the Commissioner-Referee, who placed the value of the property at $4000.00. The petition stated that a bid had been received from Ben K. Kazarian and Ben K. Kazarian, Jr., to buy the property for $3875.00. The petition asked for authority to make the sale at the stated price, in the event a higher bid was not received on or before the date of the hearing. The Trustee gave notice of sale for two o'clock P.M. on May 14, 1952.

On that day, the bankrupt filed an Answer to the petition in which, among other things, he alleged that the original appraisal had been in the sum of $1812.50, and that no creditor, either secured or unsecured, had requested a reappraisal. Concurrently with the Answer, the bankrupt filed a petition to acquire the real property at the original appraisal of $1812.50, or, in the alternative, at a value to be fixed by the Court in accordance with the provisions of Section 75, sub. s (3) of the Bankruptcy Act, 11 U.S.C.A. § 203, sub. s (3), and that a reasonable time be fixed for the petitioner to pay the amount into court. He also moved to dismiss the Petition to Sell.

On the date of the return, the Conciliation Commissioner, acting as Referee, denied the debtor's petition to acquire the property as well as the Petition to Dismiss the Petition to Sell, and entered an order confirming the sale of the property to one Irwin M. Desser for the sum of $4400.00, who had increased the original bid.

This is a petition to review these orders.

The question presented is whether the sale is valid. It is conceded that the reappraisal was not made pursuant to the provisions of Section 75, sub. s (3), but that the Referee, on his own motion, appointed an appraiser who made it. The question then is whether, after a petition under

Section 75 is turned into a bankruptcy under Section 75, sub. s (3), a sale of the property can be made as in bankruptcy without complying with the specific provisions of Section 75, sub. s, which (a) makes a reappraisal a condition precedent to sale, and (b) allows the debtor a reasonable time in which to redeem the property.

The Trustee relies upon the clause of Section 75, sub. s (3), which reads:

"If, however, the debtor at any time fails to comply with the provisions of this section, or with any orders of the court made pursuant to this section, or is unable to refinance himself within three years, the court may order the appointment of a trustee, and order the property sold or otherwise disposed of as provided for in this Act."

This provision seemingly conflicts with the provision for reappraisal, with opportunity to debtor to acquire the property. The Supreme Court has had occasion to consider the seemingly contradictory clauses of Section 75, sub. s, and has attempted to reconcile them. In Wright v. Union Central Life Insurance Co., 1940, 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184, the Court, speaking of the effect of the final clause of the Section which allows the Court to order the property sold, says:

"This provision is somewhat ambiguous. And no significant light is thrown on its meaning by the Committee Reports. To be sure it was relied on by this Court in Wright v. Vinton Branch, supra, 300 U.S. [440] pages 460-462, 57 S.Ct. [556] pages 560, 561, 81 L.Ed. 736, for the conclusion that the three-year stay provided for in § 75, sub. s (2), is not an 'absolute one' but that 'the court may terminate the stay and order a sale earlier.' 300 U.S. page 461, 57 S.Ct. page 561, 81 L.Ed. 736. But there is nothing in that opinion or in the Act which says that that power of the court may be utilized so as to *wipe out the clear and express right of the debtor under § 75, sub. s (3), to redeem at the reappraised value or at the value fixed by the court.* Nor can the existence of that power be fairly implied. The power of the court to

'order the property sold or otherwise disposed of as provided for in this Act' cannot be taken to mean *a discretionary power to terminate the proceedings through the exclusive device of a public sale.*" 311 U.S. at page 280, 61 S.Ct. at page 200. (Emphasis added.)

And, in reconciling the two apparently conflicting provisions, the Court said:

"We hold that the debtor's cross petition should have been granted; *that he was entitled to have the property reappraised or the value fixed at a hearing; that the value having been determined at a hearing in conformity with his request, he was then entitled to have a reasonable time, fixed by the court, in which to redeem at that value; and that if he did so redeem, the land should be turned over to him free and clear of encumbrances and his discharge granted.* Only in case the debtor failed to redeem within a reasonable time would the court be authorized to order a public sale." 311 U.S. at page 281, 61 S.Ct. at page 201. (Emphasis added.)

We thus have an authoritative interpretation which says that *before the power of sale is exercised,* the Court *must* give effect to the debtor's counter proposal, order a reappraisal and give the debtor an opportunity to redeem the property at the reappraised value. It is true that, in the case just cited, the question arose upon the petition of a secured creditor to sell the property. But I do not think that the Court, in laying down these conditions precedent, limited the scope of its interpretation. If at all, the power to sell in bankruptcy under the last clause of the Section, in order to satisfy the unsecured creditors, is *less compelling* than the provision in the same section allowing the secured creditor to sell the property to satisfy his debt. Indeed, the *general sale* clause reads that the court *"may order"* the property sold if the debtor is unable to refinance himself. The clause relating to *sale upon request of a secured creditor* reads that "the court *shall order*" the property upon which such secured creditors have a lien to be sold at public auction." So, if the

counter proposal of the debtor must be given effect in case of a sale at the request of a secured creditor, when the statute says that the Court *"shall order"* the sale when so requested, there is stronger reason for giving effect to it when the sale is under the permissive last clause of the section under which the Court *"may order"* the sale. This interpretation is borne out by a later case, Borchard v. California Bank, 1940, 310 U.S. 311, 318, 60 S.Ct. 957, 960, 84 L.Ed. 1222, wherein the Court, in speaking of the procedure when request for sale is made, says:

> *"The petitioners were entitled to compliance with the procedure required by the statute.* The bank, at any time, could have obtained action by the Conciliation Commissioner and the court, in accordance with the statute. *It cannot now maintain that the disorderly and unauthorized procedure followed by the parties is the equivalent of that prescribed by the statute and that, as the petitioners have not been able to rehabilitate themselves, it is entitled to enforce its liens."* (Emphasis added.)

Other courts which have interpreted this section have given to it this same meaning. Said the Court of Appeals for the Tenth Circuit in Federal Land Bank of Berkeley v. Nalder, 10 Cir., 1941, 116 F.2d 1004, 1007:

> "Before ordering a sale or abandonment of the property, the court, if so requested, should first accord the debtor an opportunity to acquire the property free and clear of encumbrances

by paying into court the amount of the appraisal of the property or of a reappraisal thereof or the value thereof fixed by the court in accordance with the provisions of § 75, sub. s (3). If the debtor requests an opportunity to exercise that right, the court should fix and accord the debtor a reasonable time within which to pay the proper amount into court."

See also, Schriever v. Oxford Building & Loan Ass'n of Oxford, Ohio, 6 Cir., 1941, 116 F.2d 683, 684; Chapman v. Federal Land Bank of Louisville, Ky., 6 Cir., 1941, 117 F.2d 321, 325; In re Cole, D.C. Wash.1941, 37 F.Supp. 860. 863.[1]

The debtor in this case made the motions prescribed in the section and sanctioned by these cases. But they were denied and the sale was made without (a) a proper reappraisal order and (b) without allowing the bankrupt to buy the property on the basis of the new appraisal and allowing him a reasonable time for consummation.

In the circumstances, the first impression which is to look askance upon attempts to redeem property after the pendency of the action in court for over thirteen years and five years from the time of the appointment of a trustee must give way to the conclusion commanded by the ruling in Wright v. Union Central Life Insurance Company, supra, that no sale is valid unless the conditions prescribed in the Section,—(a) reappraisal and (b) opportunity of the debtor to buy—are complied with.

There having been no such compliance here, the Order of the Referee, dated May 14, 1952, confirming the sale and the Or-

---

1. The statement to the contrary in Littleton v. Rust, 1947, 4 Cir., 166 F.2d 1007, is *obiter*. For the only question before the Court in that case was whether the Conciliation Commissioner was qualified to act because he was not a lawyer. In view of this, any statement as to the power to make a summary sale after the expiration of three years was unnecessary to the decision. Our attention has been called to the fact that one District Judge has held that the redemption provisions do not apply where a sale is made in bankruptcy under the last clause of the Section. In re Snyder,

D.C.W.Va.1945, 59 F.Supp. 840. And a well-known writer on bankruptcy adopts this interpretation in the face of the Wright case. 10 Remington on Bankruptcy, 1947 Replacement, Sec. 4118. But the language of Mr. Justice Douglas, speaking for a unanimous Court, is too explicit in tying the counter proposal to any *ordered* sale as to warrant substitution of one's individual judgment. See also, Wright v. Vinton Branch, 1937, 300 U.S. 440, 458–461, 57 S.Ct. 556, 81 L.Ed. 736; John Hancock Mutual Life Insurance Co. v. Bartels, 1939, 308 U.S. 180, 186–187, 60 S.Ct. 221, 84 L.Ed. 176.

ders of the same date denying the bankrupt's Motion to dismiss the Petition for Sale, and denying the debtor's Petition to Acquire the Property are, and each of them is, reversed. The cause is remanded to the Referee for further proceedings in accordance with the views here expressed.