BERNARDS ET AL. *v.* JOHNSON ET AL.

No. 2.   Reargued October 14, 1941.—Decided November 10, 1941.

*Mr. William Lemke* for petitioners.

*Messrs. William L. Brewster* and *Harrison G. Platt,* with whom *Mr. A. D. Platt* was on the brief, for respondents.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

We took this case because it presents important questions of appellate practice under § 75 [1] of the Bankruptcy Act.

The petitioners, who are adjudicated bankrupts, attack an order and a decree of the District Court, which were affirmed by the Circuit Court of Appeals.[2] The respondents are mortgagees who purchased property of the

---

[1] 11 U. S. C. § 203.

[2] 103 F. 2d 567.

bankrupts at foreclosure sales, and the trustee in bankruptcy.

The petitioners were owners of land in Oregon. April 12, 1933, the respondent, Collins, brought foreclosure proceedings on a mortgage which was a first lien on a portion of the land. April 6, 1934, two of the respondents, Johnson and United States National Bank (herein, for the sake of brevity, referred to as Johnson) instituted a foreclosure suit under a mortgage which was secured by a pledge of personalty and was also a first lien on all the land not covered by the Collins mortgage, and a second lien on the tract mortgaged to Collins. July 11, 1934, a state court entered a decree of foreclosure in the latter suit.

August 10, 1934, the petitioners jointly applied to the District Court, as farmers, for composition or extension of their indebtedness. On the same day the court restrained, until further order, any sale under the Johnson mortgage, and referred the cause to a conciliation commissioner. That officer having reported, on the reference and on a re-reference, failure to agree on a composition or extension, the petitioners, December 19, 1934, reciting the failure and their desire to have the benefits of the Bankruptcy Act, and particularly of sub-section (s) of § 75 as it then stood,[3] prayed that "they and each of them be adjudged by this court to be bankrupts, within the purview of said Acts of Congress." An adjudication as to each petitioner was entered, and, December 20, 1934, the case was referred to a referee.

February 8, 1935, the bankrupts petitioned for the appointment of appraisers and to be allowed to retain possession of their property, as provided in sub-section (s).

February 18, 1935, the restraining order of August 10, 1934, was vacated as superfluous, inasmuch as sub-divi-

---

[3] The sub-section was added to § 75 by the Act of June 28, 1934, 48 Stat. 1289.

sions (a) to (r) of § 75 are self-executing.[4]   May 21, 1935, appraisers were appointed.   May 27, 1935, this court held sub-section (s) unconstitutional.[5]

June 28, 1935, the petitioners applied for a re-reference of their original petition for composition or extension to a conciliation commissioner.   The application was denied by the court on the ground that they had been adjudged bankrupts and that their bankruptcy proceeding was then pending before a referee.   No appeal was taken.

June 29, 1935, Johnson purchased the mortgaged realty and the pledged personalty at a sale in the Johnson foreclosure suit, held pursuant to order of the state court, and the sale was confirmed July 20, 1935.   The petitioners appeared and opposed confirmation, but did not appeal from the decree.

August 26, 1935, a sale was made to Collins pursuant to a foreclosure decree entered by the state court, July 9, 1935, under the Collins mortgage, and the sale was confirmed September 16, 1935.

A new sub-section (s), to replace that held unconstitutional, having been adopted August 28, 1935,[6] the petitioners, September 30, 1935, reciting their adjudication as bankrupts and the reference of the case to a referee, and, relying on the newly adopted sub-section (s), which authorizes conciliation commissioners to act as referees in § 75 cases subsequent to adjudication, moved the court to recall the proceedings from the referee.   By order of even date the prior reference was recalled, and the referee was directed to remit the record to the court.

---

[4] It appears from the record that this order was entered *nunc pro tunc* on August 31, 1938, the court reciting that, through inadvertence, the order was not entered when made, although shown on the clerk's notes, and within the recollection of the judge.   The petitioners do not challenge the verity of the recital.

[5] *Louisville Joint Stock Land Bank* v. *Radford*, 295 U. S. 555.

[6] Act of August 28, 1935, 49 Stat. 942, 943.

Although, under the Oregon law, a purchaser at foreclosure sale is entitled to possession of the land from the day of sale,[7] the debtors remained in possession. To oust them, Johnson applied to the state court for a writ of assistance. October 3, 1935, the bankruptcy court, at petitioners' instance, temporarily restrained the sheriff from executing any such writ.

By order of October 15, 1935, the court, reciting the adjudication of December 19, 1934, referred the bankruptcy case to a conciliation commissioner.

December 18, 1935, the court dissolved the temporary restraining order against the sheriff, for the reasons that the property had been sold pursuant to an execution in the Johnson foreclosure and the sale duly confirmed; that, when these steps were taken, the state court had jurisdiction acquired prior to the commencement of the proceedings under § 75; and that the execution of the writ of assistance would not, therefore, interfere with any property of the bankrupt. No appeal was taken from the order, the writ of assistance issued, and the petitioners were dispossessed January 25, 1936.

The period of redemption from the sale in the Johnson foreclosure expired June 29, 1936, and, on July 1, a sheriff's deed was delivered.

July 15, 1936, the bankrupts filed with the conciliation commissioner a petition reciting the institution of the extension proceeding, its futility, the consequent adjudication of bankruptcy, the sheriff's sale under the Johnson mortgage, and its confirmation. They alleged that they were farmers within § 75 as amended August 28, 1935, and were, under the terms of the statute, entitled to the possession of the mortgaged property and its proceeds; that Johnson was endeavoring to exercise control of, and ex-

---

[7] Oregon Code, 1930, § 3-510. Sales of personal property are without redemption; *Dixie Meadows Co.* v. *Kight,* 150 Ore. 395, 405, 45 P. 2d 909.

clude them from, the property. They prayed an order granting them immediate possession, control, and management of the real estate, and restraining the sheriff, Johnson, and Collins "from transferring without purchase of said property in accordance with the Frazer-Lemke Act as amended" [sic].; and for a further order "specifically extending the period of redemption as provided" in the Act.

Johnson filed an answer and cross-petition, which is not included in the transcript of record certified to this court. The debtors replied, asking that the answer be dismissed; that they be accorded the full benefits of the Act; that the sheriff's deed be cancelled; and that Johnson be required to account for all crops harvested and property removed from the land.

August 8, 1936, the commissioner found that the bankrupts had never petitioned under the new sub-section (s) for appraisal, the setting aside of their exempt property, and for possession of their property under the control of the court; that appraisers had never been appointed or the property appraised; that no order in respect of exemptions or for possession by the bankrupts had ever been made; that no stay order had been entered; that no rental had ever been fixed; that no order of any sort had been made under the amended sub-section except the orders recalling the proceedings from the referee and referring them to the commissioner; that the bankrupts are not farmers within the definition of the Act; that on August 28, 1935, when the new sub-section (s) took effect, they had only an equity of redemption in the lands, except for the tract covered by the Collins mortgage; and that the new sub-section (s) was unconstitutional. He entered a decree to the effect that since June 29, 1935, the date of the foreclosure sale, the bankruptcy court had had no jurisdiction of the land then sold; that the new sub-section (s) had no application to any of the land sold in fore-

closure; that the bankrupts were not farmers within the meaning of the Act, and were not entitled to the benefits of the Act; that their petition should be denied; and that a trustee should be appointed to liquidate the estate.

The time fixed by standing rule of the District Court for petitioning for a review of a referee's order in bankruptcy is twenty days. No application was made within that time to have the order reviewed.

August 29, 1936, the creditors elected, and the commissioner thereupon appointed, the respondent Loomis trustee; and, September 3, the commissioner entered an order approving his bond.

September 10, 1936, the year for redemption from the sale in the Collins foreclosure having expired, the sheriff delivered his deed to Collins as purchaser.

September 19, 1936, the bankrupts filed with the commissioner a "notice of appeal" from the orders of August 29 and September 3. Treating the notice as a petition for review, the commissioner filed his certificate with the District Court.

Meantime, administration of the estate proceeded as in ordinary bankruptcy, and appraisers were appointed, September 25, 1936. October 23, they filed an appraisement of the property of the bankrupts, not including that which had been sold in foreclosure.

December 15, 1936, the District Court entered a decree confirming the commissioner's orders of August 29 and September 3. No appeal was taken.

January 4, 1937, the bankrupts filed with the commissioner a petition reciting their adjudication as bankrupts, and praying that the commissioner proceed with the appraisal of their property; that he rescind the order of August 8, 1936; that he remove the trustee because the latter was not elected by the requisite majority in amount of unsecured creditors, and was an improper person; that the trustee be ordered to account for all property coming

into his possession; and that the bankrupt's exemptions be set aside to them. They asked for other specific relief, not necessary to detail, and for general relief. January 11, 1937, the commissioner ordered the petition dismissed, "for the reason that all matters and things in said petition alleged have heretofore been considered upon petition filed by said bankrupts and decided adversely to said bankrupts, and said orders have all become final and conclusive."

January 13, 1937, the bankrupts filed in the District Court a petition for an order restraining the trustee from selling the personal property of the estate. The petition was denied two days later. No appeal was taken.

January 15, 1937, they filed in the District Court a petition wherein, after praying that all the files in the case be incorporated by reference, they set out in summary a history of the proceeding from the filing of the original petition for extension or composition, attacked many of the orders theretofore made, prayed that their failure to seek a review of the order of the commissioner of August 8, 1936, within the time limited for that purpose be excused; that the court review the entire proceeding, reverse all previous orders of the commissioner, and hold the petitioners farmers entitled to the benefits of the Act; that the court treat the petition "as exceptions to said decisions of the commissioner," and grant the petitioners appropriate relief, and, meantime, restrain the trustee from selling any personal property of the estate.

January 29, 1937, they filed with the court a petition for review of the commissioner's order of January 11, 1937, dismissing their petition of January 4, 1937.

To the petition of January 15, 1937, Johnson and Collins filed answers reciting the various steps in the proceeding, and the orders made by the commissioner and the court, as to which there had been no review or appeal; and alleging that all the issues raised in the petition had

consequently been finally adjudicated against the petitioners.

In addition, each answer recited the proceedings in the state court as they are above outlined, and asserted that as a result of those proceedings each respondent had acquired title and possession, and that the bankrupt, Bernards, was interfering with that possession, and prayed that their title might be quieted. The trustee in bankruptcy also filed an answer setting up the finality of the unappealed and unreviewed orders in the cause and praying certain relief.

April 13, 1938, the bankrupts filed in the court a motion to vacate and set aside "all orders of this Court, and of all the Referees and Conciliation Commissioners where it was sought to set aside or delay the carrying out of any of the provisions of the Bankrupt Act" and to reinstate the cause. The grounds assigned were to the effect that the court, the referee and conciliation commissioner had failed to comply with the Act.

The District Court held a single hearing upon the petition of January 15, 1937, the petition for review of January 29, 1937, and the motion of April 13, 1938. The bankrupts admitted the truth of the facts set up by the respondents in their cross-petitions, but not their legal effect. As all the facts were of record or admitted no testimony was taken.

May 10, 1938, the court affirmed the commissioner's order of January 11, 1937. Upon the petition of January 15, 1937, and the motion of April 13, 1938, the court made findings of fact and stated conclusions of law which were embodied in the order and decree entered. This dismissed the petition and denied the motion, quieted the title of the mortgage-creditor respondents as against the bankrupts to the lands purchased by them at foreclosure sale, ratified and approved the orders of the commissioner,

and in effect directed that the cause proceed as an ordinary bankruptcy and not under § 75 (s).

In its findings the court details the history of the proceeding and recites the order of the court of December 18, 1935, the order of the commissioner of August 8, 1936, the order of the court of December 15, 1936, affirming the commissioner's orders of August 29 and September 3, 1936, and finds with respect to each that no review was prayed or appeal taken within the time limited by rule or by law and that each of them had become final.

The bankrupts took one appeal from the order affirming on review the commissioner's order of January 11, 1937, and the order and decree dismissing their petition of January 13, 1937, and their motion of April 13, 1938, and granting the relief asked by the respondents.

May 2, 1939, the Circuit Court of Appeals affirmed both orders. May 25, 1939, that court stayed its mandate until July 15, and, directed that if a petition to this court for certiorari should be docketed by that date, the mandate should be stayed until after we had passed upon the petition.

A petition for certiorari was docketed July 10, 1939, and was denied October 23. The mandate of the Circuit Court of Appeals issued October 28. A motion made November 4, to recall the mandate and hold it pending our decision in *John Hancock Mutual Life Insurance Co.* v. *Bartels,* 308 U. S. 180, was denied November 6. The *Bartels* case was decided December 4, 1939. January 2, 1940, the petitioners presented to the Circuit Court of Appeals a motion "for recall and correction, amendment, revision or opening and vacating mandate and judgment entered thereon," upon the ground that the court's decision was contrary to ours in the *Bartels* case.

January 2, 1940, this court decided *Kalb* v. *Feuerstein,* 308 U. S. 433, and, January 18, the bankrupts supplemented their pending motion, alleging that our decision

was in conflict with that of the Circuit Court of Appeals in the instant case.

March 22, 1940, the Circuit Court of Appeals denied the motion, and, April 12, the bankrupts again petitioned for certiorari, asserting that the court had disregarded our two decisions in holding that the bankrupts' inability to rehabilitate themselves was a relevant factor in appraising their right to resort to § 75 (s), and in holding further that the automatic stay created by sub-section (o) did not survive adjudication under sub-section (s), and had refused, although it had the power, to recall its mandate so as to correct its erroneous construction of the Act. We granted certiorari April 29, 1940.

Three questions emerge from this long and complicated record. They are:

1. Assuming the decision of the Circuit Court of Appeals was erroneous, had it power to recall its mandate and reconsider the appeal? We hold that it had.

2. Assuming the challenged orders of the commissioner and the court were erroneous, were they final, binding, and impregnable to subsequent attack, since review or appeal was not sought or taken within the time limited by court rule or by law? We hold that they were.

3. Had the state court jurisdiction to proceed with foreclosure and to invest the mortgage creditors, as purchasers at the execution sales, with valid title to the mortgaged lands? We hold that it had.

*First.* The judgment of the Circuit Court of Appeals was rendered in its October 1938 Term. The stay of the mandate did not end, and the mandate was not issued, until that term had expired. The application for recall of the mandate was presented within the following term, during which the mandate had gone down. The respondents assert that the court lacked authority, after the term in which its judgment was rendered, to recall its mandate and to amend its judgment in matter of substance.

In granting the stay, the Circuit Court of Appeals might have extended the term so that it could further consider the case after this court had acted on the petition for certiorari. We think that, by staying the issue of the mandate and retaining the cause until after the subsequent term had opened, the court, in effect, did extend the term as respects the instant case and that, upon disposition of the petition for certiorari, it had power to take further steps in the cause during the term in which the stay expired and the mandate issued.

*Second.* The District Court disposed of three. distinct matters in the orders under review: The petition for review of the commissioner's orders of January 11, 1937, the petition of January 15, 1937, and the motion of April 13, 1938.

The court dismissed the petition for review. The commissioner had denied the petition of January 4, 1937, on the sole ground "that all the matters and things set out in said petition have been previously adjudicated and no review thereof has been had, or if review was taken, such actions of the Referee have been approved on review," and that "all matters and things in said petition alleged have heretofore been considered upon petition filed by said bankrupts and decided adversely to said bankrupts, and said orders have all become final and conclusive." The order affirming the action of the commissioner did not deal with the merits. The court clearly affirmed the commissioner's refusal to consider the petition for the reason stated by him.

In dismissing the petition of January 15, 1937, and the motion of April 13, 1938, the court made findings of fact and stated conclusions of law covering both. It entered what it denominated an "order and decree" with respect to both, and, as above noted, dismissed both the petition and the motion, on the stated ground that all issues therein

raised had been finally adjudicated and no review or appeal had been timely sought or taken.

If the respondents had not cross-petitioned for affirmative relief, the District Court need have taken no further action than it did in dismissing the bankrupts' petition and motion. An order denying a petition for rehearing or review, which is dismissed because the petition was filed out of time, without reconsideration of the merits, does not extend the time for appeal from the original order.[6] But there remained for disposition the prayers of the respondents for affirmative relief. The additional provisions of the decree were in answer to these prayers. As those provisions were assigned as error, the Circuit Court of Appeals had jurisdiction to review them.

Upon the admission of counsel for the bankrupts, the District Court found the facts as to the foreclosure proceedings and found that they were before a court having jurisdiction; that the titles acquired through the execution sales were good as against the bankrupts, and quieted the titles of the mortgagees as purchasers. With respect to the relief and the instructions prayed by the trustee, the court made certain findings as to what had been done in the administration of the estate, confirmed that action, and instructed the trustee as to his further proceedings. These findings and these provisions of the decree obviously were made in response to the cross-petitions of the respondents. They cannot be considered as a review of the merits requested by the petitioners.

The court also found that the bankrupts had made no attempt to comply with the new sub-section (s) of § 75; that they had, ever since the filing of their petition for adjudication on December 19, 1934, been beyond all hope of financial rehabilitation; that there was no possibility of such rehabilitation. Such findings constitute no basis

---

[6] *Bowman* v. *Loperena,* 311 U. S. 262, 266.

either for a refusal to adjudicate the farmer-petitioner a bankrupt under § 75 (s) or for dismissing the cause instead of following the procedure outlined in the sub-section.[9] In the instant case, however, these findings, though evidently directed to the relief prayed by the respondents, were not necessary to the decision of any of the questions they submitted to the court and do not render erroneous the proper disposition of the issues submitted.

*Third.* The petitioners urge that the automatic stay imposed by sub-section (o), and the extension of the period of redemption created by sub-section (n), continued throughout the case; and that all action taken in the state court was, therefore, void under the doctrine announced in *Kalb* v. *Feuerstein, supra.* The respondents insist that, in order to continue the extension and have the benefit of the stay after the conclusion of the conciliation proceedings and the adjudication in bankruptcy, timely application to the bankruptcy court to that end had to be made by the petitioners. We find it unnecessary to discuss or decide the important question thus mooted, for the reason that the orders and decrees entered by the bankruptcy court, if valid, relieved the respondents, as mortgagees, of any disability to pursue their foreclosure suits arising out of the pendency of the bankruptcy proceeding and left them free to prosecute the foreclosures in the state courts. However erroneous the challenged orders, the remedy for their correction was by timely application for review or timely appeal.[10] Since the District Court refused to review these orders and decrees out of time, the petitioners could not attack them in the Circuit Court of Appeals.

The judgment is

*Affirmed.*

---

[9] *John Hancock Mutual Ins. Co.* v. *Bartels,* 308 U. S. 180, 184–185.

[10] *Union Joint Stock Land Bank* v. *Byerly,* 310 U. S. 1, 10.