In re RAFERT.

No. 968.

District Court, D. Nebraska, Norfolk Division.

Jan. 28, 1943.

S. L. Winters, of Omaha, Neb., for debtor.

Winfield R. Ross, of Omaha, Neb., for Equitable Life Assur. Soc. of United States.

DELEHANT, District Judge.

The debtor in this proceeding under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, is the prevailing party in Rafert **v.** Conway, 8 Cir., 119 F.2d 102, and this **is** the action in which that opinion was delivered.

Upon the filing of the circuit court's mandate, and in harmony with its opinion, Judge Donohoe on August 9, 1941, entered an order staying all proceedings against the debtor under Section 75, sub. s(2), and providing that, during the period of the stay, the debtor should pay into the registry of the court certain rentals for the separate parcels of his real estate. For the Southwest quarter of Section 29, township 28 North, Range 3 West of the Sixth Principal Meridian in Pierce County, Nebraska (being the only parcel involved in the present controversy), the annual rentals for the crop years 1942 and 1943 were prescribed as: two-fifths of all small grain and corn; two-fifths of all crops grown upon the acres taken out of normal production under the government program; two-fifths of all moneys payable in respect of the land under government programs; and cash rent in the sum $10 for buildings and lots and well, with the provision that if the debtor during that period receives a larger amount from his tenant he will pay it into the registry. The order also directed, (a) rental payments for 1941 which have been made except to the extent of the cash rental in the sum of $10, and (b) a proportionate rental basis during the part of 1944 for which the stay may be effective, which latter item is not now in issue.

It must not be overlooked in this study that the debtor does not actually farm his Pierce County land, or for that matter any other portion of his land. He leases it to tenants and the rental which he was ordered to pay is the rental reserved by him in his leases with his tenants. Moreover, the rental order as to the items to be paid follows a stipulation signed by the parties in interest including the debtor and filed July 28, 1941. The rental order also clearly contemplated the amount and kind of rental customary in the community where the property is located. Section 75, sub. s(2).

While Judge Donohoe's order of August 9, 1941, omitted any explicit designation of the times each year at which rental should be paid, the stipulation of the parties partially underlying it, though probably not a model of exactness, reflects their general program for punctuality of payment of rentals by the debtor on their receipt by him in the following language: "said crop

shares to be harvested and delivered and sold at the nearest market by the debtor forthwith upon harvesting, unless the debtor obtains federal government loans thereon, the debtor to pay said cash rental promptly upon receipt thereof from his respective tenants; that the moneys received under the agricultural conservation and agricultural administration programs, also said cash rentals and the proceeds of said crop shares to be paid to the clerk of the United States District Court, District of Nebraska * * * the debtor upon making remittances of rentals will transmit with such remittances detailed information as to the quantities of crops accounted for, the sale price thereof and the particular tract of real estate from which such rentals have accrued. In the event the debtor receives rentals other than those referred to herein he will account for all of such rentals as may be received."

On April 6, 1942, the debtor having paid no part of the rental for 1941 (the Equitable Life Assurance Society of the United States, hereinafter referred to as the creditor) holder of the first mortgage upon the Pierce County farm, filed a petition seeking two things; first, an order directing immediate payment of the 1941 rentals and secondly, a further order directing the payment for 1942 and 1943 of crop rentals promptly after the harvesting of the respective crops and the cash rent by January first following immediately after each rental year. The court allowed time for the showing of cause, set the petition for hearing on April 23, 1942, before the supervising conciliation commissioner, and directed the service of notice which was duly made on the debtor and his counsel.

Meanwhile on April 22, 1942, one day before the scheduled hearing the debtor and the creditor stipulated in writing duly filed, respecting the first point involved in the creditor's petition, that a payment then made into the registry by the debtor constituted all of the rentals from the Pierce County land for 1941 except $19 which the debtor agreed to pay as soon as he should collect it from his tenant. The stipulation did not assume to touch the question of the time for payment of future rentals.

Promptly thereafter, and on April 27, 1942, the debtor having shown no cause against the creditor's petition, and deeming it to be well taken, the writer hereof entered upon it an order which, first, approved and confirmed the stipulation respecting the 1941 rents and, secondly, as to future rentals, directed that the rent share of all crops raised during the further pendency of the stay "be sold promptly after they are harvested and the proceeds forthwith paid into the registry of the court" and that "the cash rent be paid December first of each year, and that the rent share of conservation money, if any, be paid into court promptly upon receipt thereof."

That order has never been modified, was not excepted to or appealed from, and has become final, subject perhaps to its possible modification by the court in the event of any change of circumstances which may hereafter occur in the administration of this trust, a contingency not presently existing or foreshadowed.

Collaterally, it may be mentioned that as to his other farm in Seward County, Nebraska, also rented to a tenant, the debtor paid no rental for 1941 until late in May and in July, 1942, and then only in the face of a like petition for order of court compelling its payment.

1942 elapsed and during it the debtor paid no rental at all in respect of that year. So, near the year's end, and on December 14, 1942, the creditor filed a petition for liquidation of the bankrupt's estate by reason of default in the payment of 1942 rents. The court allowed time for showing of cause and set the hearing upon the petition before the supervising conciliation commissioner for December 30, 1942. The debtor seasonably filed an answer setting up his contentions to which reference will be made later.

The hearing was held on the day set. The debtor testified. The supervising conciliation commissioner on December 31, 1942, made his report and recommendations, filed January 2, 1943, in which he sustained generally the creditor's petition, recommended the allowance to the debtor of indulgence till February 1, 1943, in the matter of paying delinquent rentals for 1942 and upon default thereafter the entry of an order for liquidation. In it, upon matters of fact, he reports thus in part: "Bankrupt testified in substance as follows: that the $10.00 cash rental due for 1941 has not yet been paid; that said $10.00 has not yet been collected from his tenant and that so far he has made no effort to collect it; that he has already received the 1942 landlord's share of barley from his tenant, being 372 bushels, and that he has sold same for 45¢ a bushel and received the total sum

of $167.40 therefrom; that he now has this money on hand but refuses to pay it into the registry of the court at the present time; that the 1942 corn has been picked and the landlord's share amounts to approximately 1200 bushels which has been separated from his tenant's share; that he has all the corn up off the ground with the exception of about 75 bushels and that he would have to put a roof over the corn and ventilate it before he could obtain a government loan; that he expects to receive between $120.00 and $130.00 as the landlord's share of the A.A.A. money; * * * that on February 9, 1942 if he sells his corn, he will have about $1000.00 cash on hand for 1942 rentals; that he will pay about $500.00 on February 9, 1942 and intends to use the balance of $500.00 rental money to buy some livestock to feed and that he hopes he does not lose the last half of the rental money by speculations in hogs before the second rental payment is due according to his computation." These recitals respecting the debtor's testimony are not essentially disputed in the objections and exceptions to the report filed by the debtor on January 9, 1943, which pleading actually confirms the statements touching the non-payment of rentals.

Oral argument was had and briefs submitted to the court on January 23, 1943. No factual contention arose then. But it may now be noted as a fact that counsel for the debtor stated in oral argument that on January 22, 1943, the debtor had received and then had the cash proceeds from the 1942 corn rent.

So, the debtor is before the court nearly one month after the end of 1942, refusing to pay any part of the rent for that year after having collected the grain rent for 1942 as follows:

| | |
|---|---|
| 372 bushels barley | $ 167.40 |
| About 1200 bushels corn (estimated) | 850.00; |

in addition to which he is to be held accountable for:

| | | |
|---|---|---|
| (a) | unpaid cash rent for 1941.. | $ 10.00 |
| (b) | unpaid cash rent for 1942.. | 10.00 |
| (c) | Any amounts payable on account of crops raised on lands withdrawn from normal production | |
| (d) | Government crop benefits not less than | 120.00 |

In connection, however, with the last mentioned item, it ought fairly to be added that it is not yet shown that the debtor has actually received it, and he can not be held to its payment until he receives it.

He asserts that the order of the court entered on April 27, 1942, prescribing the time for payment of future rentals during the term of the stay was based upon a mistaken impression that the stipulation of the parties dated April 22, 1942, consented to such an order. That assertion is entirely unjustified. The stipulation which the court confirmed related only to the 1941 rents. And having confirmed it, the court in its order did nothing further respecting rentals for that year. The court then went forward in separate paragraphs and, understandingly and with no relation or reference to the stipulation, but upon the creditor's petition and the default of pleading thereto by the debtor after due notice and in the exercise of its own judgment, specified the time for payment of future rentals, to the extent that the previous order might be construed as leaving that question open.

But the debtor's principal contention, both in his answer to the creditor's petition and in his exceptions to the commissioner's report, is that the court's order prescribing the times for rental payments, and directing payment otherwise than in equal semi-annual installments the first of which must be not less than six months from the effective date of the commencement of the stay, is utterly beyond the power of the court to enter and therefore void. From this premise he argues, citing Section 75, sub. s(2), that, since the stay began August 9, 1941, and since all rental for 1941, except the ten dollar cash item, has now been paid, he is under no obligation to pay any of the 1942 rentals until February 9, 1943, i. e., six months after the end of the first year of the stay; and that he may meanwhile retain the more than $1,000 in rentals which he has already actually collected from his Pierce County tenant, estimate how much more he will probably get from government crop program benefits, and pay one-half of the total estimated returns on February 9, 1943, and the remaining one-half on August 9, 1943, and in so doing utterly disregard with impunity the court's previous explicit order.

█ The court considers that position to be indefensible and without merit. Even if the court's order of April 27, 1942, were erroneous, it was not void. Jurisdiction over the proceedings is not and can not be questioned. The making of rental orders

is a natural and normal incident of the conduct and disposition of the case. The order was entered upon petition and notice and without objection. Nor was it excepted to or appealed from. Even the notable judicial solicitude for the welfare of farm debtors has not impelled the courts, collaterally to avoid merely erroneous rulings by trial courts made in the exercise of undoubted jurisdiction. Union Joint Stock Land Bank v. Byerly, 310 U.S. 1, 60 S.Ct. 773, 84 L.Ed. 1041; Bernards v. Johnson, 314 U.S. 19, 62 S.Ct. 30, 86 L.Ed. 11; Wharton v. Farmers & Merchants Bank, 8 Cir., 119 F.2d 487. The court does not here overlook the discussion in the last cited opinion of the substantial power vested in a bankruptcy court to vacate or modify its own order where it is erroneous and no rights have become vested in reliance upon it. See, also, Wayne United Gas Co. v. Owens-Illinois Glass Co., 300 U.S. 131, 136, 137, 57 S.Ct. 382, 81 L.Ed. 557. But no such action is now invited. Nor would it be taken if it were sought.

The court considers the order assailed to be entirely correct. The material language of Section 75, sub. s(2) follows: "During such three years the debtor shall be permitted to retain possession of all or any part of his property, in the custody and under the supervision and control of the court, provided he pays a reasonable rental semiannually for that part of the property of which he retains possession. The first payment of such rental shall be made within one year of the date of the order staying proceedings, the amount and kind of such rental to be the usual customary rental in the community where the property is located, based upon the rental value, net income, and earning capacity of the property."

It will be observed that the provision for the supervision and control of the court is included which contemplates that the prescription of all of the conditions surrounding the retention of possession by the debtor, including the payment of rental, shall issue from the court. The quoted language of the act is not self-executing. Nor is it inflexible; within the limits of reasonableness it is elastic. The payment of rental is the primary consideration for the retention of possession; and it is to be "reasonable" and in an "amount and kind" constituting the "usual customary rental in the community where the property is located". Now, the allowance of a variety in the kind of rental is of the very essence of justice and equity in the measure under scrutiny. Let its breadth of application be remembered. In those few words a grant of power and judicial discretion was made covering the entire United States with an infinite variety of soil, moisture and climatic conditions, and these in a myriad of combinations. The measure contemplated, without enumeration, a diversity in farming which includes the cotton or tobacco producer, the fruit grower, the potato grower, the midwestern grain and stock farmer, the machine operated wheat tract, the extensive stock ranch and countless others. It is too frequently forgotten that it also contemplated, and became operative with respect to, urban real estate owned by farm debtors seeking the protection of the legislation. Significantly, its authors were from a state in the less productive area of the middle West, in which, however, the luxurious fertility of the Red River Valley is but a few miles distant from broad wheat lands and only a little more remote from farms with huge grazing areas. Diversity in rentals is notorious in such states. In this judicial district, justice in the erection of a rental structure for a normal farm imperatively requires that so far as practicable the obligation to pay rent be keyed, upon an annual basis, to the actual annual production of the farm, with the consequence that landlord and tenant ratably enjoy the benefits, or, bear the adverse consequences, of practical results. Thus, after experience with crop failures in the youth of Nebraska the exaction of a gross cash rental, irrespective of actual crop production was early discarded as impracticable and unjust, and the use of a combination grain and cash rental structure with the cash requirement comparatively small, became virtually universal. The rental order in this case is a fair example of such a program, save that here the cash rental is unusually small in consequence of the availability for tillage of nearly all the farm.

No exception is taken to the rental structure; but the narrow position is assumed by the debtor that because the rental is made payable as it is received by the debtor from his tenants under his own leases, and as to grains promptly after harvest, it is, therefore, not strictly made payable "semiannually" and the order touching time of payment is void. It must be obvious that crop rentals do not issue from lands in strictly equal semiannual installments. The

debtor recognizes that in his own lease for this very parcel. Substantially, if the debtor's farm is well balanced, the payments in strict accordance with the order will accomplish a reasonably equalized, though not exact semiannual division.

In this state, the normal small grain harvest and marketing periods embrace the months of July, August and September, those of corn, the months of November, December and January.

The narrow, unnatural and unjust, view contended for by the debtor has not been adopted by any court within the knowledge of the writer hereof or the research of counsel for the debtor. And this court will not, except in pursuance of a reversing mandate, allow to the adverb "semiannually" in this context a significance that would do violence to the manifest and declared purpose of the legislation. The citation by the debtor in support of his position of John Hancock Life Insurance Company v. Bartels, 308 U.S. 180, 60 S.Ct. 221, 84 L.Ed. 176; Borchard v. California Bank, 310 U.S. 311, 60 S.Ct. 957, 84 L.Ed. 1222; Peterson v. John Hancock Mutual Life Insurance Co., 8 Cir., 116 F. 2d 148; Wright v. Union Central Life Insurance Co., 304 U.S. 502, 58 S.Ct. 1025, 82 L.Ed. 1490; Kalb v. Feuerstein, 308 U. S. 433, 60 S.Ct. 343, 84 L.Ed. 370; and Bernards v. Johnson, 314 U.S. 19, 62 S.Ct. 30, 86 L.Ed. 11, is not persuasive. That they serve to admonish trial courts to care in the safeguarding of rights guaranteed by subsection s to debtors and to a rational degree of liberality in that regard is well understood. But they do not compel the lower courts to betray an unpardonable narrowness in the exercise of a legitimate discretion in the prescription of rentals during the enjoyment of those rights.

Inquiry may be made whether, if rentals for a given year must, under the statute be paid in exactly equal semi-annual installments, they must not also be paid *during* the year for which they arise, and not, as is here contended, *after* its complete lapse. Manifestly, the allowance of the debtor's contention would permit him to utilize the last year of the stay and then, remaining in default of payment of rent, suffer the automatic termination of this action, and deny the power of the court to compel him to pay the final installment of the consideration for the delay accorded him. That is an intolerable prospect.

The debtor's avowed purpose in retaining the rentals involved is highly instructive, and fatal to his position. He wants to speculate with them in the hazardous field of buying and feeding livestock with expensive grains. That is preeminently the thing he has no right to do. The grain rentals, out of the sale of which he obtained most of the money, and the share of government moneys do not belong to him. He is merely a conduit through which they must come into the registry of the court for disbursement in a strictly prescribed order. The debtor has no right to gamble with them, to make money from them, must less to lose them. And this court will not willingly suffer that course in frank violation of its express orders. The debtor's position upon this point is the less tenable in that, actually, he is not a farm operator at all but merely lives on a farm and rents his lands.

The court is, therefore, of the opinion that the position of the debtor can not be sustained, but on the contrary, constitutes that type and degree of "contumacious conduct" (Wright v. Union Central Life Insurance Company, 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184), which, if persisted in beyond the period of indulgence now granted him, will necessitate the allowance of the creditor's request; and that the Report and Recommendations of the Supervising Conciliation Commissioner are well taken and should be followed generally by the court.

Counsel for the creditor will promptly prepare and submit to counsel for the debtor an order in accordance herewith, overruling the debtor's objections and exceptions, and confirming the Supervising Conciliation Commissioner's report and adopting his recommendations, with this exception, that the debtor shall be allowed until February 15, 1943 (in view of the time that will have elapsed between the filing of the Report and Recommendations and the entry of the order pursuant hereto), within which to pay into the registry all rentals collected by him for 1942 from the real estate above described. However, the order will be prepared in such manner that it will be a presently effective order for the appointment of Herman Aye as trustee, and for the sale or other disposition by the trustee of the parcel of land above described as provided for in the Bankruptcy Act, all in accordance with the provisions of the concluding sentence of Section 75, sub. s(3) of

said act, reserving, however, unto the debtor his redemption rights in said real estate as provided by said section. Wright v. Union Central Life Insurance Company, 311 U.S. 273, 61 S.Ct. 196, 85 L.Ed. 184. The trustee's bond may be fixed at $1,000. By way of allowing the debtor the suggested further period for payment of rent, the order will contain at its conclusion a provision for the defeasance of its designation and direction of the trustee, if the debtor shall, on or before February 15, 1943, pay into the registry of the court all rentals received on or before that date by him for 1942, and concurrently with such payment, lodge with the clerk of the court a statement in writing giving detailed information as to the quantities of crops accounted for and the sale prices thereof, and the sources of any other rentals then paid. The order will expressly disclaim any operation in respect of any property of the debtor other than the tract now in question. If counsel shall agree upon the form of the order it may be presented informally for signature. Otherwise, it may be presented to the writer in chambers at Lincoln for settlement upon written notice for the period of two days or more.