564

**GLENN-COLUSA IRR. DIST. v. MASON.**

No. 10529.

Circuit Court of Appeals, Ninth Circuit.

June 20, 1944.

J. J. Hankins, of Meridian, Cal., A. L. Cowell, of Stockton, Cal., and W. L. Callender, of Willows, Cal., for appellant.

W. Coburn Cook, Turlock, Cal., for appellee.

Sloane & Steiner, of San Diego, Cal., amicus curiæ.

Before WILBUR, MATHEWS, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

The district court sitting in bankruptcy[1] ("An Act To establish a uniform system of bankruptcy throughout the United States," approved July 1, 1898, as said act has been amended and is now in effect, particularly as said act has been amended by the addition thereto of said Chapter X by the act of the Seventy-Fifth Congress, designated Public Number 302, approved August 16, 1937) denied the Glenn-Colusa Irrigation District its petition for the final decree in its proceeding for confirmation of a plan of composition of indebtedness. The District appeals.

The Irrigation District filed its petition under § 83 of the Bankruptcy Act, 11 U.S. C.A. § 403, November 29, 1937. Certain bondholders of the District, among them respondents herein, opposed the plan. They denied, inter alia, allegations contained in the petition to the effect, that farming in the District had been unprofitable, that tax obligations of the District were too great for the land owners therein to pay, that the District was insolvent, that the District was unable to meet its debts and that it was imperative for the District to effect a composition of its debts, and they averred that the plan proposed is unfair. In addition to the above, respondents alleged sixteen separate defenses to the District's petition. The petition and the plan, however, were approved, and the interlocutory decree was entered as of April 13, 1940, and an appeal therefrom dismissed February 20, 1941, and the decree is now final.

On May 15, 1942, the District filed its petition for final decree, in which petition there was included by reference the interlocutory decree and the report of the disbursing agent, showing that he had received the money necessary to pay dissenting bondholders (respondents of whom appellee Mason is one). The petition for final decree also alleges that the money had been turned over to the clerk of the court for distribution, "and that petitioner is now entitled to a final decree as aforesaid."

Respondent Mason objected to the issuance of a final decree upon the ground that the entry of such decree would violate provisions of the Fifth, Tenth and Fourteenth amendments to the Constitution. Es-

---

[1] Chapter IX in Chandler Act of 1938, 11 U.S.C.A. §§ 401–404.

sentially these same points supported by the same arguments were settled adversely to respondent's contention in West Coast Life Ins. Co. v. Merced Irr. Dist., 9 Cir., 114 F.2d 654, certiorari denied 311 U.S. 718, 61 S.Ct. 441, 85 L.Ed. 467, and associated cases.

He further objected upon the ground, "That findings and interlocutory decree did not establish that the plan of composition is fair, equitable or for the best interests of creditors, or the maximum amount that the bankrupt can pay." Fraud not having been alleged or proved we hold that the interlocutory decree is res judicata as to matters therein contained. Bernards v. Johnson, 314 U.S. 19, 62 S.Ct. 30, 86 L.Ed. 11; Union Joint Stock Land Bank of Detroit v. Byerly, 310 U.S. 1, 10, 60 S.Ct. 773, 84 L.Ed. 1041; Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106. Our comment just made as to these objections does not dispose of the case for, on a showing had before the district court, that court held that there had been "a deviation from and a substantial modification of the plan approved by the interlocutory decree, and that the plan has not been carried into effect." It will be necessary, therefore, briefly to explain the plan of composition which met with the court's approval and to check the acts done by the District to determine whether or not the court was in error in refusing the final decree.

### The Plan.

Petitioner is an irrigation district, a California corporation (California Irrigation District Act of 1897, St. 1897, p. 254, as amended), having been formed in 1924 by the consolidation of two irrigation districts which had been organized under the California Irrigation District Act, the consolidation having been accomplished under a California legislative act, California Statutes 1921, page 1018. The consolidated district assumed the old district's outstanding bonds.

Prior to November 7, 1935, the District applied to R. F. C. for a loan to enable it to reduce its indebtedness, and that agency as of September 27, 1934, authorized a loan "not exceeding $802,500.00" in amount. This sum was the greatest that R. F. C. would loan the District, and the loan was to leave the District debt free except as to the lender. $2,500 of the money so advanced could be used to defray costs of financing. The total principal bonded indebtedness of the District was then $1,395,-150 and $19,883.30 in warrants for accrued and unpaid interest. R. F. C. offered to purchase such bonds at 56.535 cents on the dollar. The offer was not acceptable to a majority of the bondholders. The plan was essentially the same as that more particularly outlined in West Coast Life Ins. Co. v. Merced Irr. Dist., supra.

By November 7, 1935, certain changes had taken place. The matured bonds and all the warrants had been paid. As a result, the indebtedness of the District consisted of bonds in the principal sum of $1,248,453.66 and interest coupons maturing on or after January 1, 1934. Also by November, 1935, the District had acquired $178,000 of the principal sum of its own bonds, and these had been sold subject to delivery to R. F. C. The original plan was amended and as amended provided for the purchase of the outstanding bonds, not including the bonds purchased by the District, at 69 cents on the dollar. Funds for the purchase were to be furnished by R. F. C., the governmental agency to pay to the bondholders 56.535 cents per dollar and the District to pay the balance. The advance by R. F. C. for this purpose was in the sum of $660,943. The District was to issue 4% bonds for the sum advanced by R. F. C., and the old bonds were to be cancelled or retired. The plan also contained the following, which appears in the R. F. C. resolution authorizing a loan of not to exceed $802,500. "* * * however, if the borrower shall before any New Bonds are delivered to this corporation [R. F. C.], pay or cause to be paid to this corporation an amount equal to the disbursements it has made to or for the benefit of the borrower with 4% interest thereon until paid, this corporation will thereupon surrender or cause to be surrendered the Old Securities then held by it or no its behalf to the Borrower."

Subsequent to the approval and entry of the interlocutory decree, which, we have seen, has become final, and before the District's petition for the final decree, the District had reduced its indebtedness to R. F. C. to the sum of $425,000. The District then found that it could issue and sell its bonds to a purchaser other than R. F. C. with the obligation to pay 3¼% per annum

interest, a lesser rate than the 4% promised to R. F. C. It issued the 3¼% bonds.

It must be remembered that even before the year 1934 the District was clearly laboring under too heavy a debt load. Acres of its lands had ceased paying assessments, and its bond obligations were not being met. The petition for composition was filed in the fall of 1937, and the final decree was applied for in the spring of 1943. With a great part of its debt burden removed, with prices for produce greatly improved, and with the general turn toward prosperity throughout the nation, it is not remarkable that a great improvement was shown in the affairs of the District. These facts, of course, made possible the sale of the bonds at a saving of three-quarters of one percent interest.

The ability to pay cannot be figured upon the condition of the District after the probable success of the plan nor after the execution of the plan nor after the advent of more fortuitous times. We are unable to see in this situation any deviation from the plan of composition which met the approval of the court in the interlocutory decree. Nothing the District did had the slightest effect upon the dissenting bondholders, and nothing was done by the District inconsistent with the debt-reducing plan.

There appears to have resulted a great deal of misunderstanding from the fact that R. F. C. in its original appraisal fixed the limit of its expenditure for refinancing at $800,000 plus $2,500 for costs to the District. It fixed its limit of 56.535 on the dollar of indebtedness and never varied its offer. The history of the case indicates that the refinancing could not have been accomplished at that figure, and it appears that no better figure was obtainable at the time the plan was presented to the court for approval. The total indebtedness had been reduced as we have seen, but a large part of its reduction was from the District's own assets. After the debt had been reduced, the District again, out of its own assets, added to the bond payment a figure which made possible the assent of the requisite per centum of indebtedness. Although the additional sum paid reduced the District's assets, R. F. C. was favorable thereto. The payment was in full accord with the plan approved by the interlocutory decree. No question of fraud is raised by the proceeding, and, so far as the evidence reveals the conduct of the District's affairs, it would appear that its officers ably and faithfully piloted the District through its distress.

Reversed and remanded.