## PETERSON et al. v. BAKER et al.

### No. 13690.

Circuit Court of Appeals, Eighth Circuit.

June 9, 1948.

Rehearing Denied July 6, 1948.

J. R. McManus, of Des Moines, Iowa (Walter F. Maley, of Des Moines, Iowa, on the brief), for appellants.

Addison G. Kistle, of Council Bluffs, Iowa (John R. DeWitt, of Griswold, Iowa, on the brief), for appellees W. F. Baker and Anna Baker.

No brief filed for appellee Montgomery County, Iowa.

Before GARDNER, WOODROUGH, and COLLET, Circuit Judges.

COLLET, Circuit Judge.

This appeal is from an order of the District Court dismissing a proceeding brought by Farmer-Debtors under the Frazier-Lemke Act. 11 U.S.C.A. 203. A statement of the proceedings prior to the present appeal is necessary to an understanding of the issues now before this court.

Gilbert Peterson and Mary Peterson were the owners of two tracts of land, one comprising 120 acres, the other 80 acres. On February 28, 1929, they placed a mortgage on the 80 to secure a note for $7500.00 to the Federal Land Bank of Omaha. Prior to February, 1939, the John Hancock Mutual Life Insurance Co. had instituted foreclosure proceedings on a mortgage it held on the 120-acre tract. On February 27, 1939, Mary Peterson as the owner of both tracts filed a petition under Sec. 75, subs. a to r, of the Frazier-Lemke Act seeking a composition with her creditors. Both tracts were listed in the petition. Failing to secure a composition with her creditors, she filed an amended petition in bankruptcy under Sec. 75, sub. s, praying that she be adjudged a bankrupt, that her property be appraised, that her exemptions be set aside to her, that she be allowed to retain possession and that all proceeding for the enforcement of the mortgages be stayed. The amended petition was referred to the Conciliation Commissioner who made an order adjudging her a bankrupt, setting aside her exemptions and providing that a hearing be had at which creditors might appear and show cause why an order should not be entered staying all proceedings and continuing her in possession. The John Hancock Mutual Life Insurance Co. filed objections to the granting of a stay of proceedings as to the 120-acre tract, asserting among other things

that the 120-acre tract should be rejected from the proceedings on the ground that the indebtedness was greatly in excess of the value of the land and hence its inclusion in the proceedings would only be a burdensome asset in the administration of the bankrupt estate. The Conciliation Commissioner sustained this objection, the District Court affirmed, apparently following this court's decisions in Cowherd v. Phoenix Joint Stock Land Bank, 8 Cir., 99 F.2d 225, and Bender v. Federal Farm Mortgage Corporation, 8 Cir., 99 F.2d 252. Those cases having been reversed by the Supreme Court in John Hancock Mutual Life Ins. Co. v. Bartels, 308 U.S. 180, 60 S.Ct. 221, 84 L.Ed. 176, upon appeal from the District Court's order, we reversed. Peterson v. John Hancock Mut. Life Ins. Co., 8 Cir., 116 F.2d 148. Thereafter, on January 13, 1941, the stay order was entered putting debtor in possession of both tracts for a period of three years from March 1, 1941, and fixing the rents. The first semi-annual rental payment was made. All of the second was not. The Conciliation Commissioner ordered liquidation of the assets of the estate and the termination of the stay order. The District Court affirmed, specifically finding that the failure of the debtor to pay the rent was contumacious, but allowing her a reasonable time to redeem the property by paying the appraised value thereof. On appeal this court reversed. Peterson v. John Hancock Mut. Life Ins. Co., 8 Cir., 137 F.2d 396. On October 4, 1943, the Conciliation Commissioner fixed the rents on the 120-acre tract for the years 1942 and 1943, gave debtor credit on the 1942 rent for $150.00 she had paid some time during 1942, and ordered her to pay the remainder of the 1942 rent within 30 days. On appeal to the District Court, that court affirmed. On her appeal from the District Court, this court affirmed. Peterson v. John Hancock Mut. Life Ins. Co., 8 Cir., 143 F.2d 869.

While the present record is aggravatingly deficient in many particulars, it may be gleaned therefrom that the debtor paid no rent on either tract after 1942. On January 25, 1944, the debtor made application for a reappraisal of her land including the 80-acre tract. A reappraisal was made and confirmed, and an order entered giving her

time within which to redeem. Some time subsequent to January, 1944, and prior to July 27, 1944, a Trustee was appointed to take charge of the estate. On the latter date an order was entered authorizing and directing the Trustee to sell the real estate. The debtor filed a petition for review of the order. On September 12, 1944, the District Court approved the order of sale and on September 20, 1944, the debtor served notice of appeal from the order of confirmation. On October 17, 1944, the District Court set aside its order of September 12 directing the sale of the real estate by the Trustee. It appears from a reference thereto in an order of the Conciliation Commissioner that the District Court entered an order on December 15, 1944, to the same effect as the order of September 12, 1944, which, as stated, directed the sale of the real estate by the Trustee, and that the debtor appealed from the December 15, 1944, order. It does not appear that anything was done to carry out the December 15th order until March 1, 1945, when the Conciliation Commissioner made an order designed to put the Trustee in possession of all the debtor's real estate. On the same date, March 1, 1945, the Federal Land Bank of Omaha filed an application with the Conciliation Commissioner to be allowed to proceed with the foreclosure of its mortgage on the 80-acre tract. It does not appear that any action was taken on this application. On April 27, 1945, the District Court made an order directing the United States Marshal to put the Trustee in possession of both tracts. It appears that in the order of April 27, 1945, the District Court stated that " * * * the Bankrupt has since the year 1942 neglected and refused to pay any rentals and claims she is not required under the law to pay any rentals and that she will not pay rentals and will not surrender the real estate * * * that the Bankrupt has refused to obey the Orders of the Commissioner to pay rents due. On the contrary, she has sold the crops which were a part of the rentals and commingled the proceeds with her own money and has converted such proceeds from the sale of the crops, which she should have paid to the Commissioner, for her own use and purpose and refused to pay the same to the Commissioner."

On May 14, 1945, Mary Peterson, the debtor, her husband Gilbert Peterson, the Federal Land Bank of Omaha, the John Hancock Mutual Life Insurance Co., and the Trustee appointed to sell the real estate all joined in a stipulation of settlement of the entire bankruptcy proceedings. By that stipulation it was agreed: that the Federal Land Bank of Omaha and the John Hancock Mutual Life Insurance Co. were the only creditors of the debtor; that "all parties interested in the * * * cause [were] desirous of settling same without further litigation and expense"; that debtor and her husband Gilbert Peterson would execute a general warranty deed conveying the 120-acre tract to the John Hancock Mutual Life Insurance Co. and give immediate possession thereof; that the Trustee was to pay to the John Hancock Mutual Life Insurance Co. $2473.00 and the latter was to release and satisfy its claim in full; that debtor should have until May 22, 1945, to remove her personal property from the 120-acre tract; that the bankruptcy proceedings were to be dismissed without prejudice to the Federal Land Bank of Omaha; and that any balance remaining in the hands of the Trustee after payments provided for in the stipulation had been made was to be paid to debtor and her attorney. The last paragraph of the stipulation is as follows:

"6. Upon the performance of the above matters by all parties as above set out, the said Trustee shall file a final report in this cause showing compliance therewith and be discharged and his bond exonerated, and all said bankruptcy proceedings shall be dismissed with prejudice including any and all appeals now pending from the conciliation commissioner acting as referee in bankruptcy and from the United States District Court of Iowa, Southern District, all costs of said dismissals to be paid by the said Mary H. Peterson."

It appears from a verified motion filed by appellees' counsel in the office of the Conciliation Commissioner and reproduced in this record that as a result of the settlement and pursuant to this stipulation the Trustee on July 6, 1945, paid to Mary Peterson and her attorney $5,572.28 in cash and delivered to her 1300 bushels of corn. No denial of this fact appears in the record.

Pursuant to the stipulation and upon the report of the Conciliation Commissioner that its terms had been carried out, the District Court entered the following order on July 16, 1945:

"In the above entitled matter, Earl F. McClelland, Conciliation Commissioner for Montgomery County, Iowa, to whom this matter was referred for administration under Sec. 75 of the Bankruptcy Act, having filed his final report with recommendations therein showing that the parties entered into a stipulation of settlement dated May 14, 1945, and it appearing that the terms and conditions of the stipulation have been completed as provided therein, now after notice to all creditors and parties in interest and upon the recommendation of the said Commissioner and pursuant to the agreement and stipulation of the parties,

"It is hereby ordered that the debtor's petition and the proceedings herein be and the same are dismissed. The commissioner is directed to furnish a copy of this order to the debtor and other interested parties and to certify the files and records to the Clerk of this Court for deposit."

After the bankruptcy proceedings were dismissed the Federal Land Bank commenced proceedings in the District Court of Montgomery County, Iowa, for the foreclosure of its mortgage on the 80-acre tract upon which Mary Peterson and Gilbert Peterson were then residing. Those proceedings resulted in a decree of foreclosure on March 11, 1946. The 80-acre tract was sold under that decree on April 13, 1946, to W. F. Baker and Anna Baker for $8,832.-65. The sale price being $1000 in excess of the amount due on the mortgage and the expenses of the foreclosure proceedings, the Clerk of the Iowa District Court issued his check to Mary Peterson for that amount.

On March 29, 1947, Gilbert Peterson and Mary Peterson filed another proceeding under the Frazier-Lemke Act. The petition does not appear in this record, but from other pleadings which are reproduced it is evident that the Petersons undertook to describe as an asset to be administered upon, the same 80-acre tract which had been involved in the former proceedings and upon which they then resided and which had theretofore been sold to W. F. Baker and Anna Baker in the foreclosure proceedings heretofore referred to. The District Court issued a formal order approving the petition as properly filed and referred the cause to the Conciliation Commissioner on March 31, 1947.

Under the Law of Iowa, real estate foreclosed under a mortgage may be redeemed by the debtor at any time during one year from the date of the foreclosure sale. The 80-acre tract having been sold on April 13, 1946, the purchasers, W. F. Baker and Anna Baker, presented their certificate of purchase to the sheriff of Montgomery County, Iowa, on April 15, 1947, and obtained from him a sheriff's deed. On the following day they made application to the District Court of Montgomery County, Iowa for a Writ of Possession. The Writ was granted and delivered to the sheriff of the county. On the morning of April 17, 1947, the sheriff executed the Writ of Possession by removing the Petersons and their personal belongings from the premises. On April 22, 1947, debtors filed an application in the United States District Court for an order staying all proceedings to dispossess them and seeking to have the sheriff and the Bakers punished for contempt. An order to show cause was issued and W. F. Baker and Anna Baker answered on May 12, 1947, setting up their purchase of the 80 acres, alleging that no notice was given to them of the filing or pendency of the bankruptcy proceedings filed on March 29, 1947, that they did not know of the pendency of the bankruptcy proceedings, that the petition did not properly describe the 80 acres in question, and asked that the proceedings be dismissed as to the 80-acre tract.

On the same day, May 12, 1947, W. F. Baker and Anna Baker filed in the office of the Conciliation Commissioner a motion to strike the 80 acres from the bankruptcy proceedings.

A hearing was held by the District Court on the debtors' application for a stay and contempt citation and an order was made on May 19, 1947, granting the stay but finding that the Bakers had no knowledge

of the pendency of the bankruptcy proceedings and absolving them from any contemptuous conduct. Although the record is not clear on the subject, it inferentially appears that debtors returned to the premises and that the sheriff or some one replaced debtors' personal property.

Thereafter the Conciliation Commissioner held a hearing on the motion to strike the 80-acre tract from the proceedings and, on June 17, 1947, entered an order reciting in detail the proceedings and events which had transpired in the previous Farmer-Debtor proceedings involving both the 120-acre tract and the 80-acre tract and found that debtors had been fully accorded all of their rights under the Frazier-Lemke Act with respect to the 80-acre tract in the previous proceedings, and sustained the motion to strike the 80-acre tract from the second bankruptcy proceedings. Debtors petitioned the District Court for a review of this order. A hearing was held on the petition for review and on July 11, 1947, the District Court entered findings of fact and conclusions of law approving and confirming the order of the Conciliation Commissioner. None of the evidence presented to the Conciliation Commissioner or to the District Court on the motion to strike is included in the record. An application for permission to appeal from the District Court's order of July 11, 1947, an application for supersedeas, and an application for restoration of the possession of the 80-acre tract to debtors pending appeal were filed by debtors on July 16, 1947. No notice of appeal was given. An order fixing the supersedeas bond at $500 but denying debtors' prayer for restoration of the premises was entered by the District Court on July 23, 1947.

On August 22, 1947, the County Attorney of Montgomery County, Iowa, filed a motion in the office of the Conciliation Commissioner alleging that Montgomery County was a creditor of Gilbert Peterson and Mary Peterson and praying for the appointment of a Trustee to conserve the personal property of Gilbert and Mary Peterson. The Conciliation Commissioner entered an order on October 15, 1947, in which he made the finding from the "files and records" in the

proceedings that notice of the hearing on the motion had been given to all creditors and the bankrupts; that the only creditors shown by debtors' (bankrupts') schedules were W. F. Baker and Anna Baker, his wife, and Montgomery County, Iowa; that W. F. Baker and Anna Baker were the holders of a sheriff's certificate of sale to the 80-acre tract and had no claim on any other property or assets of the bankrupts; that Montgomery County held a lien for taxes for the year 1946 on the 80 acres and had no claim or lien on any other property or assets of the bankrupts; that the 80-acre tract was stricken from the schedules of the bankrupts on June 17, 1947; that the order striking that tract from the proceedings was approved on review by the District Court and no appeal taken therefrom by the bankrupts; that no creditors remained in the proceedings and nothing further remained for the Commissioner or the court to do in the bankruptcy proceedings. Upon those findings the Conciliation Commissioner denied the motion of Montgomery County for the appointment of a Trustee and dismissed the proceedings.

Debtors filed their petition for review of the Conciliation Commissioner's order of dismissal upon the grounds that notice was given that the hearing on Montgomery County's motion would be held on September 3, 1947, and that there was no such hearing on that date or any other date pursuant to subsequent notice; that the order of dismissal "was arbitrary, unwarranted, in excess of jurisdiction and void"; that such an order could only be invoked upon the application of a secured creditor, and no such creditor made application for the order of dismissal. After a hearing thereon, the District Court denied the petition for review and on November 7, 1947, confirmed and approved the order of dismissal. There is no evidence in the record concerning notice of the hearing before the Conciliation Commissioner on the motion of Montgomery County other than the finding of the Commissioner above referred to. On December 6, 1947, debtors gave notice of appeal from the order of November 7. In that notice of appeal of December 6, 1947, is found the only notice of appeal from the

order of July 11, 1947, striking the 80-acre tract from the proceedings.[1]

■ The detail to which the foregoing statement has been extended is prompted by debtors' contention that they have not had their "day in court" for the administration of their rights under the Frazier-Lemke Act in so far as the 80-acre tract is concerned. They say that because the Federal Land Bank of Omaha agreed in the stipulation of settlement and dismissal of May 14, 1945, that the dismissal of those proceedings should be without prejudice to the Federal Land Bank,[2] and because their right of redemption from the foreclosure sale still remained, that the door was left open for them to reinstitute Farmer-Debtor proceedings on the 80-acre tract. That contention is without merit. Debtors recited in the stipulation that they were desirous of settling the cause without further litigation. They agreed that all of the bankruptcy proceedings which included this 80-acre tract should be dismissed with prejudice. They received and retained substantial financial returns from the settlement. They retained the possession and use of the 80-acre tract for approximately six years during the pendency of the proceedings. They make no contention that both of them did not join in the voluntary settlement and dismissal of the previous action. They make no claim that they now seek any rights or privileges which were not open to them and were given them in the previous bankruptcy proceeding. Compare Buss v. Prudential Ins. Co. of America, 8 Cir., 126 F.2d 960. The settlement that both of them made which resulted in the stipulation of May 14, 1945, was made after they had had the possession and use of the 80-acre tract as a result of the bankruptcy proceedings for much longer than the period contemplated by the Statute, and was made after the 80 acres had been twice appraised at their instance and debtors were, pursuant to the Statute, about to be required to pay its reappraised value or have it sold by the Trustee. And they make no claim now that the stipulation and the dismissal of the proceedings in 1945 were not entirely free and voluntary on their part. The trial court was fully justified in the conclusion that debtors had received all of the benefits pertaining to the 80-acre tract which the law gave them. Barlow v. Federal Land Bank of Berkeley, 10 Cir., 156 F.2d 360.

■ But even if some right or benefit remained which could have been made the premise for further administration of the 80-acre tract under the Frazier-Lemke Act the dismissal of the 80 acres from the second proceedings on July 11, 1947, terminated any such right as to that tract. That order was an appealable order from which timely appeal had to be taken in order to give this court jurisdiction to consider any error in striking the 80 acres from the proceedings. 11 U.S.C.A. §§ 47, 48; State of Missouri v. Todd, 8 Cir., 122 F.2d 804; In re Schulte-United Inc., 8 Cir., 59 F.2d 553; Brinton v. Federal Land Bank of Berkeley, 10 Cir., 129 F.2d 740; Marcy v. Miller et al., 10 Cir., 95 F.2d 611; Bernards v. Johnson, 314 U.S. 19, 62 S.Ct. 30, 86 L.Ed. 11. Since the time for an appeal from the order

[1] That part of the December 6th notice of the appeal relating to the July 11, 1947, order is as follows:

"Further, that Petitioners intend to and do hereby appeal from the judgment of said United States District Court, aforesaid, entered on the 11th day of July, 1947, confirming an order of the Conciliation Commissioner in striking from the schedules of said proceedings a certain eighty acre farm, upon which they asked relief and the benefit of the act in question.

"Further, that Petitioners appeal from the judgment of the Court, aforesaid, entered on the 11th day of July, 1947, dissolving an injunction theretofore entered in said proceeding on the 19th day of May 1947, restraining W. F. Baker, Anna Baker and other persons from interfering with the rights of Farmer-Debtors in and to the use, possession and occupancy of the eighty acres mentioned and involved, and from each and every other ruling, order, finding and entry in said cause adverse to the Farmer-debtors."

[2] That paragraph of the stipulation is as follows:

"3. The Federal Land Bank of Omaha, of Omaha, Nebraska, agrees with the said Mary H. Peterson and Gilbert Peterson, her husband, that the bankruptcy proceedings in this cause may be dismissed by the Court without prejudice to said The Federal Land Bank, and said bank agrees to the disbursements of all funds by the Trustee as herein set out."

of July 11, 1947, had long since expired when the appeal from the dismissal of the entire proceedings was taken on December 6, 1947, the propriety of the order of July 11, 1947, may not now be reviewed.

Before this appeal was docketed for hearing on the merits, appellees W. F. Baker and Anna Baker filed a motion to dismiss on the ground that there was no timely appeal from the order of July 11, 1947. That motion was overruled for the reason that the untimeliness of an appeal from the order of July 11, 1947, could not furnish adequate ground for the dismissal of the appeal from the order dismissing the entire proceedings made on November 7, 1947, from which latter order a timely appeal was taken. The debtors now assume that the order overruling the motion to dismiss constituted an adjudication by this court that there was a timely appeal from the order of July 11, 1947. That assumption is erroneous for the reasons heretofore stated.

Debtors complain that the order of the Conciliation Commissioner of June 17, 1947, striking the 80 acres from the proceedings, and the order of October 15, 1947, dismissing the entire proceedings, were both void because they were made by the Commissioner on his own motion without notice or hearing.

If the propriety of the order of June 17, 1947, which culminated in the order of July 11th, above referred to, was reviewable, this contention would still be without merit. The order of June 17, 1947, recites that due notice was given of the hearing and that a transcript of the evidence was made and a stipulation entered into by the parties, both of which were made a part of the record in the office of the Conciliation Commissioner. No part of that evidence or any evidence relative to the giving of notice of the hearing is preserved in the record before us. Under those circumstances we will assume that the recital in the Conciliation Commissioner's order that notice was given and a hearing was held is correct. Peterson v. John Hancock Mut. Life Ins. Co., 8 Cir., 143 F.2d 869.

The contention that the order of dismissal of the entire proceedings made by the Conciliation Commissioner on October 15, 1947, and approved by the District Court by its order of November 7, 1947, was void for want of a notice or hearing is equally untenable. Again the only evidence in the record on the subject is a recital in the Conciliation Commissioner's order that "notice of this hearing was given to all creditors and to said bankrupts as provided by law and the rules of this Court on the 22nd day of August, 1947."

The complaint that the order of dismissal was made on the Conciliation Commissioner's own motion is without merit. As heretofore noted the order recited the fact that there were no remaining creditors who had any interest in the bankrupt estate. In fact there were no creditors at all left. The Bakers went out of the case when the order striking the 80 acres was made and became final. Montgomery County, which was the only other creditor, was pursuing the 80 acres to collect a tax lien thereon. The object of its pursuit dropped out of the cause with the order striking the 80 acres and its interest and standing as a creditor in the cause ended then. There was, as the Conciliation Commissioner found, nothing left for him or the District Court to do. On review of the Conciliation Commissioner's order the District Court approved the dismissal. That order was the only one the Court could have properly entered. That is the order appealed from. It is affirmed.

Debtors make several objections to the validity of the sheriff's deed to the Bakers because the confirmation of the sheriff's sale and the issuance of the so-called writ of assistance issued by the State Court occurred while the present proceedings were pending. Those questions do not affect the validity of these proceedings or the adequacy of the administration of debtors' rights in the 80-acre tract and therefore need not be discussed.

The order of the District Court dismissing the proceedings is affirmed.